John R. HATHAWAY and Paula S. Hathaway, Plaintiffs-Appellants,

v.

CEDARBURG MUTUAL INSURANCE COMPANY, Defendant-Respondent,

OSHKOSH HOME BUILDING CENTER, INC., Defendant,

TRUSSCO, INC., and Truss Manufacturing, Inc., Defendants-Third Party Plaintiffs-Cross-Defendants,

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Third Party Plaintiff,

v.

Terry HATHAWAY, Third Party Defendant,

Alvin CURTIS, Third Party Defendant-Cross Claimant.

Court of Appeals

*No. 92–3200. Submitted on briefs June 4, 1993.—Decided June 16, 1993.*

(Also reported in 503 N.W.2d 5.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael D. Golden* of *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert J. Asti* and *James F. Parks* of *Levy & Levy, S.C.* of Cedarburg.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

ANDERSON, J.  John and Paula Hathaway appeal from the trial court's grant of summary judgment to Cedarburg Mutual Insurance Company denying their claims that the homeowner's policy issued by Cedarburg Mutual covered the collapse of their home. The Hathaways argue that the improperly

designed truss system which caused the collapse was a "defective material" or "method in construction" under the policy. We affirm on the basis that the truss system failed due to a design defect which the parties did not intend to cover under those clauses.

The Hathaways purchased a homeowner's policy from Cedarburg Mutual which provided coverage from June 5, 1987 to June 5, 1988. The policy provided coverage for "collapse," stating in relevant part:

> **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
>
> . . . .
>
> f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

After obtaining this coverage, the Hathaways began building a two-story home. The Hathaways desired a clear-span basement which required the installation of a truss system. The builder installed a pre-built truss system on the first floor and proceeded to build the second floor.

After the roof was installed, the builder noticed that the flooring was beginning to bow and warp. The builder installed bracing in the basement in order to "shore up" the truss system. The house was eventually completed but the problems continued to intensify, resulting in warped and bowed floors, cracked walls, warped wall-mounted cabinets, countertops which pulled away from the walls, problems with the plaster, and door frames which are not plumb and level. The Hathaways claim that the repair of the home will

731

require removing the truss system and replacing it with a different support structure at a cost of $49,000.

The Hathaways brought suit against Cedarburg Mutual, alleging that the "collapse" provision of the homeowner's policy issued by Cedarburg Mutual covered the damages to the Hathaways' property. The court denied the Hathaways' first summary judgment motion; they renewed the motion six months later. In support of their motion, the Hathaways introduced the affidavit of John Lampe, a professional engineer. Lampe stated that the trusses were "underdesigned" and concluded that the truss system was in a "state of collapse" which began in June of 1987. The court granted summary judgment to Cedarburg Mutual pursuant to sec. 802.08(6), Stats., holding that the policy did not extend collapse coverage to design defects.

As a preliminary matter, Cedarburg Mutual argues that the Hathaways waived their right to appeal by failing to present the trial court with an opportunity to correct its allegedly erroneous grant of summary judgment. In support, Cedarburg Mutual cites *Paape v. Northern Assurance Co.,* 142 Wis. 2d 45, 416 N.W.2d 665 (Ct. App. 1987). We conclude that *Paape* does not apply to this case. In *Paape,* as in this case, the trial court granted summary judgment to the insurance company because the policy did not provide coverage. *Id.* at 50, 416 N.W.2d at 667. Unlike this case, the plaintiff had an additional claim against the insurance company for reformation of contract. Although the motion for summary judgment did not ask the trial court to evaluate this second claim, the trial court concluded that this claim also was without merit. On appeal, the plaintiff asked for a reversal because the trial court improperly considered the merits of the second claim *sua sponte. Id.* at 52, 416 N.W.2d

at 668. The court of appeals held that the plaintiff waived this error because it did not alert the trial court to the error or move for reconsideration. *Id.* at 52–53, 416 N.W.2d at 668–69.

Here, the trial court's alleged error was related to the merits of the claim addressed in both summary judgment motions. The issues were addressed by both parties in their briefs. The Hathaways' failure to ask the trial court to reconsider its decisions did not waive the issue on appeal where they already had the opportunity to present their arguments to the court and the court rejected them.

Addressing the merits of the appeal, we do not review the trial court's decision granting summary judgment to Cedarburg Mutual; we independently apply the methodology set forth in sec. 802.08(2), Stats., to the record *de novo. Wegner v. Heritage Mut. Ins. Co.,* 173 Wis. 2d 118, 123, 496 N.W.2d 140, 142 (Ct. App. 1992). The methodology we apply in summary judgment analysis has been stated often and we need not repeat it. *Id.; see In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Whether the insurance policy provides coverage for the collapse of the Hathaways' house requires an examination of the "collapse" clause of the homeowner's policy. The interpretation of an insurance contract is a question of law to which we owe no deference to the trial court. *Oelhafen v. Tower Ins. Co.,* 171 Wis. 2d 532, 535, 492 N.W.2d 321, 322 (Ct. App. 1992).

An insurance contract should be interpreted as it would be understood by a reasonable person in the position of the insured, and the policy language is to be given its common and ordinary meaning. *Dailey v. Secura Ins. Co.,* 164 Wis. 2d 624, 628, 476 N.W.2d 299, 300 (Ct. App. 1991). Similar to the interpretation of other contracts, the interpretation of the insurance contract should be made with an aim toward effecting the true intent of the parties and the extent of policy coverage. *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 122, 403 N.W.2d 747, 752 (1987).

Cedarburg Mutual does not contest the facts as stated by the Hathaways for the purposes of this appeal. Instead, it asserts that summary judgment in its favor was proper because the Hathaways' complaint and supporting affidavits do not allege damages covered by the "collapse" clause of the homeowner's policy. It argues that the cause of the collapse was a design defect, which was neither a "defective material" nor a "method in construction." The Hathaways contend that the truss system, as used, was a "defective material" which caused the collapse or alternatively that the "method in construction" includes the design and manufacture of component parts of the home.

Lampe's affidavit which was submitted in support of the Hathaways' motion for summary judgment states that the truss system was improperly designed because of a failure to account for the midspan load created by the first and second floor center walls and the second floor framing. Although the trusses were properly designed and installed to support a load of 1540 pounds, the additional 1100 pound midspan load caused the trusses to fail.

It is apparent from this affidavit that the collapse was the consequence of an error by the truss designer, architect, or other person responsible for determining the strength of the truss needed. The truss system as designed is not a "defective material" because it was suitable for that which it was designed—a 1540 pound load. Likewise, the installation of the inadequate truss was not a "method in construction" because there is no allegation that improper installation methods and procedures were used. Therefore, the policy does not cover the collapse of the Hathaways' house and summary judgment was properly granted to Cedarburg Mutual.

We are unconvinced that the terms "defective material" and "method in construction" include design defects. While policy provisions tending to limit liability must be construed against the insurer, a policy may not be construed to bind the insurer to a risk which it did not contemplate. *Bartel v. Carey,* 127 Wis. 2d 310, 314–15, 379 N.W.2d 864, 866 (Ct. App. 1985). If the policy were interpreted to include coverage for design defects, the homeowner insurer would functionally become the malpractice or errors and omissions insurer for the architects or other persons responsible for the truss specifications. There is no indication in the record that Cedarburg Mutual intended to cover this type of risk or that the Hathaways sought such extensive coverage.

*By the Court.*—Order affirmed.