[No. G038749. Fourth Dist., Div. Three. May 30, 2008.]

JIM H. ROBERTS et al., Plaintiffs and Appellants, v.
ASSURANCE COMPANY OF AMERICA et al., Defendants and
Respondents.

**COUNSEL**

Jorgensen & Salberg, Richard Allen Jorgensen and Jeffrey R. Salberg for Plaintiffs and Appellants.

Bishop, Barry, Howe, Haney & Ryder, Jonathan Gross and Jay E. Framson for Defendant and Respondent Assurance Company of America.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Esther P. Holm for Defendants and Respondents Feng Ling Jing and Linda A. Lee dba Jubilee Insurance Services.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Plaintiffs Jim H. Roberts and Elisa N. Le appeal from the judgments entered in favor of their homeowners insurance carrier, Assurance Company of America (Assurance), and their insurance brokers Linda A. Lee and Ling Jing Feng doing business as Jubilee Insurance Services (Jubilee) following the granting of their motions for summary adjudication. They contend there are triable issues of fact regarding whether they requested Jubilee to obtain liability insurance in addition to course of construction coverage. As to Assurance, they argue their claims fell within the collapse coverage provision of the policy and that there are triable issues of fact as to the efficient proximate cause of their loss. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Facts Leading up to Plaintiffs' Complaint*

In 1998, plaintiffs purchased an undeveloped lot in Anaheim located on a steep slope with the intention of building a home on it. They obtained a

$680,000 loan from Chase Manhattan Bank (Chase) and hired a general contractor.

Chase required that plaintiffs obtain a course of construction insurance policy. At plaintiffs' request, Jubilee procured the coverage, also known as builder's risk insurance, with Assurance.

Assurance issued two consecutive annual builder's risk policies commencing September 2002, and an unsold dwelling policy commencing October 2004. The builder's risk policies provided first party property coverage during the course of construction and obligated Assurance to pay "for direct physical *loss* to Covered Property from any Covered Loss described in this Coverage Form." The unsold dwelling policy provided first party property coverage for the property until it was sold or occupied and obligated Assurance to pay for "direct physical *loss* to Covered Property from a Covered Cause of *Loss* described in this Coverage Form."

Plaintiffs began construction in late 2002. In September 2004, they noticed cracks in the foundation and in a retaining wall next to the house, which worsened over the next few months. After a period of heavy rains, a landslide occurred in early February 2005 causing severe damage to the home.

Plaintiffs' attorney reported a claim to Assurance in mid-February under the 2003–2004 policy. The loss notice reported the date of the loss as September 1, 2004, and described the loss as "[h]ouse next door was built with overloaded slope resulting in slope failure. Slope failure." The next month, the City of Anaheim ordered the home demolished and notified Assurance.

Assurance retained civil and geotechnical engineer Keith Tucker to investigate the causes of the landslide. Tucker concluded the landslide was caused by an ancient landslide under the properties, "which was activated by the placement of fill soils" on plaintiffs' property and the neighboring lot during grading. The heavy rains in January and February 2005, which accelerated the rate of slope subsidence that had already begun, constituted a second immediate cause of the landslide.

Assurance denied plaintiffs' first party property damage claim, citing the policies' exclusions for earth movement, weather conditions that contribute to

a loss caused by earth movement, acts or decisions of any governmental, regulatory or controlling body, and loss caused by faulty, inadequate, or defective planning, development, surveying, siting, design, construction or grading.

## 2. *Plaintiffs' Complaints and the Summary Adjudication Motions*

In April 2005, plaintiffs sued the neighboring property owners and contractors. Several of the defendants cross-complained against plaintiffs. Plaintiffs tendered the cross-complaints to Assurance for defense and indemnity, but was advised the course of construction policy did not provide third party liability coverage.

Plaintiffs then commenced the present action against Jubilee and Assurance. Against Jubilee, plaintiffs' second amended (operative) complaint alleged three causes of action: breach of contract, breach of fiduciary duty, and negligence. Each was premised on the contention that plaintiffs requested, but did not receive from Jubilee, general liability coverage.

As to Assurance, plaintiffs asserted seven causes of action. This appeal concerns the first through third causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief related to the first party property claim. Plaintiff Le was dismissed on demurrer from these claims on the ground she was not an insured on the policy and thus lacked standing to sue.

Both defendants moved for summary adjudication. Jubilee's motion was based on the ground plaintiffs had only requested course of construction insurance and therefore it could not be held liable for not obtaining general liability insurance. The court agreed and granted the motion.

Assurance moved for summary adjudication of the first through third causes with regard to first party coverage for the loss and the punitive damages claim relying on policy exclusions for earth movement, acts of government agencies, and faulty, inadequate, or defective planning, zoning, development, surveying, siting, design, specifications, construction, and materials used. The court granted the motion as to all causes of action and the punitive damages claim and sustained most of Assurance's objections to plaintiffs' evidence. It tentatively ruled "the predominant cause was plaintiff[s'] engineer, who had knowledge of the ancient slide [but] failed to

design, grade or site the project which are excluded causes." Based on its evidentiary determinations, it also found "plaintiff[s] failed to establish actual concealment . . . ." In its final ruling, the court adopted its tentative decision and further rejected plaintiffs' contention there was a triable issue with regard to collapse coverage.

The court entered judgment for Jubilee and Assurance.

## DISCUSSION

### 1. *Introduction*

Plaintiffs contend the trial court erred in granting Jubilee's and Assurance's motions for summary adjudication and subsequently entering judgment in their favor. We address each motion in turn, applying the same standard as an order granting summary judgment. (*Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 648 [96 Cal.Rptr.2d 874].)

In our de novo review (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*)), "we independently review the record" and "apply the same rules and standards" as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571].) The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th at p. 850, fn. omitted.) When conducting our independent review, we consider "all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66 [99 Cal.Rptr.2d 316, 5 P.3d 874]), as well as all inferences reasonably drawn from that evidence. (*Aguilar, supra,* 25 Cal.4th at p. 843.)

### 2. *Jubilee*

The basis of Jubilee's motion was that plaintiffs had only requested it procure course of construction insurance and therefore it could not be held liable for not obtaining general liability insurance. Course of construction insurance provides only first party coverage and not liability insurance. (See *Southern Cal. Edison Co. v. Harbor Ins. Co.* (1978) 83 Cal.App.3d 747, 756–757 [148 Cal.Rptr. 106].) As Jubilee notes, an insurance agent generally has no duty to volunteer that an insured should obtain different or additional

insurance coverage. "The rule changes, however, when—but only when—one of the following three things happens: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured . . . ." (*Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 927 [67 Cal.Rptr.2d 445].)

On this issue, Jubilee presented evidence showing Roberts requested only course of construction coverage. In Roberts's deposition testimony, he admitted the only type of insurance he asked Jubilee to obtain was course of construction, which was all Chase required him to obtain. The underwriting information form filled out by Roberts asked for building insurance but left blank the line for "general liability," and the insurance application prepared by Jubilee describes the "nature of business/description of operations by premise(s)" (boldface and capitalization omitted) as "course of construction." (Capitalization omitted.) All of the invoices sent to Roberts were for course of construction insurance; he never received one for liability insurance. The checks Roberts used to pay for the original policy and 2004 renewal state in the reference lines that they are for "course of construction" insurance and "Builder Ins [*sic*] Renewal." Finally, the policies issued by Assurance to Roberts were for course of construction and builders risk coverage. Such evidence satisfied Jubilee's initial burden of showing it had no duty to obtain liability insurance.

To defeat summary adjudication, plaintiffs could not rely on assertions that are "conclusionary, argumentative or based on conjecture and speculation," but rather were required to "make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact . . . ." (*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 10–11 [130 Cal.Rptr.2d 263].) Plaintiffs failed to carry their burden.

In their opposition, plaintiffs acknowledged the underwriting information form Roberts filled out and the insurance application prepared by Jubilee requested only course of construction coverage. They also conceded Assurance's quote and revised premium quotes "specifically state[], 'Course of Construction' " and that Roberts signed a revised application requesting course of construction coverage.

But they argued that Roberts "reasonably believed and understood that he procured both third-party liability and first-party construction property

coverages" because Jubilee "generated an explanation of premium and coverage form . . . indicat[ing] $680,000 in first party coverages, and $1,000,000 / $2,000,000 in third-party liability coverages for the Course of Construction policy," and after Assurance issued the policy, Jubilee issued a Certificate of Liability for 2002–2003 confirming such coverage. They also contended that Linda Lee admitted in her deposition that plaintiffs "requested liability coverage." No triable issue was created by these facts.

We reject plaintiffs' assertion that although they "never specifically requested 'liability coverage,' . . . Lee induced [them] into paying the premium by making [them] reasonably believe that liability coverage was included in the subject policy in that she identified liability coverage in both the quote and the certificate of insurance after receipt of the premium." The original quote sent to plaintiffs contains no reference to liability insurance; rather the word "liability" is handwritten only on the copy submitted in opposition to Jubilee's summary judgment motion. Because it was not on the original quote sent to plaintiffs, they could not have relied on it. Nor could they have relied on the certificate of insurance because it was dated the day after plaintiffs had already paid the premium.

As for Lee's testimony, plaintiffs have taken her words out of context. We have reviewed the testimony and agree with Jubilee that plaintiffs "edited the testimony to suit [their] purposes." Rather than "I get a fax from Jim Roberts for Chase Manhattan Bank . . . [to r]equest insurance of liability," the actual testimony is that Lee received a fax from Roberts for Chase to "request insurance of liability for . . . Roberts . . . . And they requested for builder risk coverage."

Before the hearing, Jubilee submitted other portions of Lee's deposition testimony along with the letter from Chase to Roberts asking for evidence of his hazard's coverage. The letter made no mention of general liability coverage. Lee testified that when she received the letter, she called Chase, which requested the certificate of insurance state the amount of general liability coverage issued to Roberts's contractor.

The trial court found Lee's supplemental testimony explained why the certificate of insurance contains both builder's risk and general liability limits and that the evidence established the policies were separate. It concluded, "That coupled with Roberts[']s admission he never asked for general liability . . . seems to show that [he] never requested of Lee to provide him with general liability insurance. [His] undisclosed intent does not carry the day." Contrary to plaintiffs' argument, the court did not make a "factual determination that [their] 'undisclosed assumption would not appear to support his claim.' "

Rather, the court determined the undisputed facts showed plaintiffs never requested liability insurance. Having conducted a de novo review of the evidence, we agree.

The evidence presented by plaintiffs would not allow a reasonable trier of fact to find in their favor and thus no triable issue was created. (*Aguilar, supra,* 25 Cal.4th at p. 850.) Because the causes of action against Jubilee for breach of contract, breach of fiduciary duty, and negligence were all premised on the claim plaintiffs requested general liability coverage from Jubilee but did not receive it, summary adjudication was appropriate. Having already sustained a demurrer without leave to amend to the only other causes of action against Jubilee (negligent misrepresentation and fraud), the court did not err in entering judgment in its favor.

### 3. *Assurance*

Roberts, the sole insured under the policy, contends the court erroneously granted Assurance's summary adjudication motion because it failed to consider the "collapse coverage" under the policy and made a factual determination the proximate cause of the loss was earth movement rather than the developer's concealment of the ancient landslide. We reject these claims.

#### *Breach of Contract and Declaratory Relief Claims*

An insurer may "seek[] summary judgment on the ground the claim is excluded," in which case it has "the burden . . . . to prove that the claim falls within an exclusion. [Citation.]" (*Brodkin v. State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 216 [265 Cal.Rptr. 710].) To satisfy its burden, an insurer need not "disprove every possible cause of the loss" and once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists. (*Alex R. Thomas & Co. v. Mutual Service Casualty Ins. Co.* (2002) 98 Cal.App.4th 66, 73 [119 Cal.Rptr.2d 394].)

Here, Assurance's summary adjudication motion argued the loss fell within the policy's exclusion for earth movement. After an almost year-long investigation, Tucker concluded the damage to plaintiffs' property "was the result of the movement of an ancient landslide . . . below the propert[y], which was activated by the placement of the fill soil placed on the [adjoining] lot and on the Roberts lot during grading of those lots prior to construction, in combination with heavy rains in January and February 2005." Assurance also pointed out that, despite citing several possible causes in their discovery responses, plaintiffs never identified the predominate cause of their damages.

Based on this evidence, Assurance met its burden to show the claim was barred under the exclusion for earth movement.

### (1) *Collapse Coverage*

■ Roberts argues Assurance did not satisfy its initial burden because it did not address collapse coverage in its moving papers. The contention lacks merit. An insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment. (*Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.* (1997) 53 Cal.App.4th 250, 255 [61 Cal.Rptr.2d 442].) Roberts failed to carry his burden.

According to Roberts, "coverage exists if the jury determines that defective construction methods in overloading the head of the slope during the construction of [plaintiffs'] home caused the collapse of the structure . . . ." He relies on the following policy provision: "Additional Coverage [¶] a. Collapse [¶] We will pay for direct physical *loss* to Covered Property, caused by collapse of all or part of a building or structure insured under this Coverage Form, if the collapse is caused by one or more of the following: [¶] . . . [¶] (6) Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation." (Capitalization omitted.)

Roberts never presented a claim under the collapse coverage provision nor asserted during discovery that the house "collaps[ed]" due to "defective . . . methods in construction." Nevertheless he now argues "the loss was covered" "because 1) the structure 2) collapsed 3) as a result of defective construction methods . . . 4) during the course of the construction of [plaintiffs'] home." According to him, the defective method in construction was the overloading of the head of the slope.

The phrase "defective . . . methods in construction" is not defined in the policies and there are no California cases on point. Assurance cites a Wisconsin case, *Hathaway v. Cedarburg Mut. Ins. Co.* (Ct.App. 1993) 177 Wis.2d 728 [503 N.W.2d 5], which considered whether a policy provision providing coverage for "collapse" caused by "use of defective material or methods in construction . . ." included an improperly designed truss system. (*Id.* at p. 731 [503 N.W.2d at p. 6].) In moving for summary judgment under this clause, the insureds submitted an expert declaration stating "the truss system was improperly designed because of a failure to account for the midspan load created by the first and second floor center walls and the second floor framing. Although the trusses were properly designed and installed to support a load of 1540 pounds, the additional 1100 pound midspan load caused the trusses to fail." (*Id.* at p. 734 [503 N.W.2d at p. 7].) The insureds argued "the truss system, as used, was a 'defective material' which caused the collapse or alternatively that the 'method in construction' includes the design and manufacture of component parts of the home." (*Ibid.*)

*Hathaway* disagreed, stating "[i]t is apparent from this affidavit that the collapse was the consequence of an error by the truss designer, architect, or other person responsible for determining the strength of the truss needed. The truss system as designed is not a 'defective material' because it was suitable for that which it was designed—a 1540 pound load. Likewise, the installation of the inadequate truss was not a 'method in construction' because there is no allegation that improper installation methods and procedures were used." (*Hathaway v. Cedarburg Mut. Ins. Co., supra,* 503 N.W.2d at p. 7.)

■ We find *Hathaway* persuasive and adopt its reasoning. Roberts does not contend an improper method was used to place the fill soil on the slope. Rather he argues his geotechnical expert "failed to adequately survey, design or site the project." As in *Hathaway,* this was a design error and not a defective method in construction. Under these circumstances, the collapse coverage provision does not apply.

During oral argument, plaintiffs alternatively suggested the house collapsed due to the placement of defective fill material on the slope over the ancient landslide. But plaintiffs not only failed to cite any evidence showing the fill material was defective, but also this theory was never raised in the trial court or in either the opening or reply briefs. The contention is waived. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27] [failure to cite to supporting evidence forfeits claim on appeal]; *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356–357, fn. 6 [165 Cal.Rptr. 787, 612 P.2d 877] ["appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived"].)

### (2)   *Concealment*

Because Assurance satisfied its initial burden in moving for summary adjudication, the burden shifted to Roberts to "show the existence of a triable issue of material fact on that issue. [Citation.]" (*Alex R. Thomas, supra,* 98 Cal.App.4th at p. 76.) He failed to do so.

Roberts concedes earth movement is expressly excluded and that it was one of the causes contributing to the loss. But he argues the efficient proximate cause of the loss was concealment of the ancient landslide by the developer. According to him, the concealment set the slope failure into motion and thus is the efficient proximate cause of the loss.

Roberts relies on *Sabella v. Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889] for the rule that " '[i]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " (*Id.* at pp. 31–32.) But "[t]he California Supreme Court later moved away from this formulation and held that the efficient proximate cause is 'the predominating' or 'most important cause of the loss.' [Citation.]" (*Tento Intern., Inc. v. State Farm Fire and Cas.* (9th Cir. 2000) 222 F.3d 660, 663; see also *Julian v. Hartford Underwriters Ins.* (2005) 35 Cal.4th 747, 750 [27 Cal.Rptr.3d 648, 110 P.3d 903] [" 'When a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss,' but 'the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause.' "].)

Moreover, the proximate efficient cause doctrine applies only when two or more conceptually distinct perils combine to cause the loss. (*De Bruyn v. Superior Court* (2008) 158 Cal.App.4th 1213, 1223 [70 Cal.Rptr.3d 652]; *Finn v. Continental Ins. Co.* (1990) 218 Cal.App.3d 69, 72 [267 Cal.Rptr. 22] (*Finn*).) "When, however, the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application." (*Chadwick v. Fire Ins. Exchange* (1993) 17 Cal.App.4th 1112, 1117 [21 Cal.Rptr.2d 871].)

In *Finn*, water leaking from a broken sewer pipe caused foundation damage and coverage was denied under an exclusion for seepage or leakage. The insured argued the break in the pipe was the "efficient predominating cause" of the damage, with the leakage being merely an intermediate cause. (*Finn, supra,* 218 Cal.App.3d at p. 72.) *Finn* disagreed, explaining, "The *Sabella* analysis has no application here because leakage and broken pipes are not two distinct or separate perils. In *Sabella* . . . , the two perils were conceptually distinct: that is, they could each, under some circumstances, have occurred independently of the other and caused damage. [Citations.] In the present case there are not two conceptually distinct perils. Leakage or seepage cannot occur without a rupture or incomplete joining of the pipes. This case involved not multiple causes but only one, a leaking pipe." (*Id.* at p. 72.)

Similarly in *Chadwick v. Fire Ins. Exchange, supra,* 17 Cal.App.4th 1112, deficient framing techniques in construction caused cracks in the walls. The insurance policy excluded coverage for damage caused by latent defects in construction. The plaintiffs argued negligent construction, a nonexcluded

peril, was the efficient proximate cause of the damages. Rejecting the contention, *Chadwick* stated, "An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss." (*Id.* at p. 1117.) The court concluded, "Whether characterized as negligent, intentional or innocently inadvertent, the peril itself—the defective framing—is one and the same. To say builder negligence 'caused' the defective framing is, in this context, to indulge in misleading wordplay . . . ." (*Id.* at p. 1118; see also *Pieper v. Commercial Underwriters Ins. Co.* (1997) 59 Cal.App.4th 1008, 1020 [69 Cal.Rptr.2d 551] [rejecting application of efficient proximate cause doctrine where arson fire damaged home insured under policy containing exclusion for damage caused by brush fire because " '[u]nder the single causation analysis, it is irrelevant what caused the [fire as t]he crucial and undisputed fact is that the [loss] was caused by a brush fire sweeping across seven miles of brush land and destroying everything contained thereon before causing the [loss]' "].)

Here, concealment of the ancient landslide is not a conceptually distinct peril apart from the ancient landslide itself. The damage to the property was caused by the movement of the ancient landslide under the property. The reason for the movement, whether due to the placement of fill or the alleged concealment of the ancient landslide, is immaterial. Concealment by the developer was not a separate cause for the loss, but merely a separate explanation for the single cause of the loss, i.e., earth movement.

Even if the efficient proximate cause doctrine did apply, Roberts admitted his own geotechnical engineer knew of the ancient landslide but failed to report its presence when it performed engineering services for the affected lots. In light of that, any alleged concealment by the developer was at most " 'a *remote* cause of the loss' " and cannot be considered " 'the efficient proximate (meaning predominant) cause of the loss.' " (*Julian v. Hartford Underwriters Ins. Co, supra*, 35 Cal.4th at p. 754.)

### 4. *Remaining Claims*

The opening brief raises no issues relating to the summary adjudication of the second cause of action for breach of the implied covenant of good faith and fair dealing or the punitive damages claim. Accordingly, such issues are waived. (See *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345, fn. 6 [100 Cal.Rptr.2d 446] [failure to raise issue in opening brief waives it on appeal].)

## DISPOSITION

The judgments are affirmed. Respondents shall recover their costs on appeal.

Bedsworth, J., and O'Leary, J., concurred.

On June 20, 2008, the opinion was modified to read as printed above.