Filed 12/18/15  Busch v. Gorry, Meyer & Rudd CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANITA BUSCH, | B260081 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC316318) |
| v. | |
| GORRY, MEYER & RUDD LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elihu M. Berle, Judge.  Affirmed.

Law Offices of Ian Herzog, Ian Herzog and Evan D. Marshall for Plaintiff and Appellant.

Waxler Carner Brodsky, Andrew J. Waxler and Danielle R. Sokol for Defendant and Respondent.

_____

Anita Busch alleged various tort and statutory claims against private investigator Anthony Pellicano and one of his clients, Michael Ovitz. Busch also named a law firm, defendant and respondent Gorry, Meyer & Rudd, LLP (Gorry), which had represented Ovitz in several lawsuits (none involving Busch) and used Pellicano in connection with three of the lawsuits. The trial court granted Gorry's motion for summary judgment based on evidence showing that the firm did not retain Pellicano in connection with any matter, litigation or otherwise, involving Busch. In short, the court found it undisputed that, whatever wrongs Ovitz and Pellicano may have done as to Busch, they did it on own accord, without Gorry's involvement. We affirm.

## FACTS

### Gorry Hires Pellicano to Assist in Three Cases

In 2002, Ovitz's company, Artists Management Group, LLC (Artists), retained Gorry to represent Artists and certain related individuals in four litigation matters listed respectively: *Casey v. Artists Management  Group, LLC* (Super. Ct., L.A. County No. BC270781), hereafter the "*Casey* litigation;" *Bernier v. Artists Management Group, LLC* (Super. Ct., L.A. County No. SC071759), hereafter the "*Bernier* litigation;" *Alcon v. Artist Management Group, LLC* (Super. Ct., L.A. County No. BC276499), hereafter the "*Alcon* litigation;" and *Lyster v. Artists Management Group, LLC* (Super. Ct., L.A. County No. SC071310), hereafter the "*Lyster* litigation." During this same general time frame, Artist also retained Gorry to assist in another Artists litigation matter that was being handled by other lawyers: *Artists Management Group, LLC v. Advantage Marketing Group, Inc.* (U.S. Dist. Ct., No. CV 01 4890 MMM (MCx), hereafter the "*Advantage Marketing*" litigation.

Gorry agreed with Artists (through Ovitz) that the law firm would retain Pellicano to investigate parties involved in the *Bernier*, *Casey* and *Advantage Marketing* litigations noted above. Pellicano charged Gorry a $25,000 fee for each of the three cases. Gorry deposited Artists' checks into the firm's client-trust account, and, on May 14, 2002, the firm issued three checks from its client-trust account — in the amount of $25,000 each — payable to Pellicano.

2

***Gorry Hires Pellicano in a Case with Steven Seagal***

In the small world that is Los Angeles and the entertainment industry, there was a further connection between Gorry and Pellicano. In 2000, Patricia Nichols had filed a "slander" lawsuit against actor and producer Steven Seagal and others (Super. Ct., L.A. County No. BC229401), hereafter the "*Nichols* litigation." Gorry represented Seagal in the *Nichols* litigation through judgment after trial.

In July 2002, Gorry filed a lawsuit against Seagal claiming that he owed the firm more than $250,000 in unpaid legal fees for work done in the course of the underlying *Nichols* litigation. (Super. Ct., L.A. County No. SC072829.) On June 17, 2002, shortly before Gorry filed its fee collection action, Gorry partner Christopher Rudd wrote a letter to Seagal's business lawyer stating that Gorry would be filing suit shortly, and that it had "retained the services of Mr. Anthony J. Pellicano in connection with the . . . amounts owed. He has the authority to negotiate on our behalf with respect to the collection of the debt. Please communicate directly with Mr. Pellicano concerning any proposals and payment . . . ."

***Ovitz Alone Hires Pellicano to Investigate Busch***

Busch worked as a journalist for the New York Times in the first part of 2002, and began working for the Los Angeles Times about mid-2002. Starting in March 2002, and continuing into May 2002, Busch and another journalist at the New York Times, Bernard Weinraub, wrote a series of stories on Ovitz and Artists (*ante*) which apparently were not flattering. At the time the New York Times stories were published, Ovitz was trying to sell Artists.

At a federal criminal trial against Pellicano in April 2008, Ovitz testified as a prosecution witness. Ovitz testified that he contacted Pellicano on April 11, 2002, to discuss a "complex situation." Ovitz testified that the subject of the call was his then-ongoing efforts to sell Artists, and the news stories by Busch and Weinraub noted above. Ovitz hired Pellicano with the hope of finding "embarrassing information" about Busch. Pellicano eventually delivered information to Ovitz which he found "helpful."

3

In support of Gorry's motion for summary judgment in Busch's current case, Gorry offered a declaration by Ovitz in which he stated that neither he nor Artists "ever retained [Gorry] to handle any matter related to Busch." Further, Ovitz stated that neither he nor Artists "ever paid Gorry any money to retain Pellicano to investigate Busch." Gorry partner Christopher Rudd submitted a declaration in which he stated that, because Gorry had not been retained by Ovitz or Artists to handle any matter related to Busch, Gorry did not retain Pellicano to investigate Busch nor did it pay any money to Pellicano to investigate Busch.[1]

According to Gorry partner Rudd's declaration, "no one from [the firm] spoke to or communicated with Pellicano regarding Busch . . . [n]or did [the firm] ever receive any information from Pellicano regarding Busch." Gorry did not maintain a file or have any documents related to Busch. The first time Gorry partner Rudd learned about Busch, and of Pellicano's investigation of Busch, was when he read news articles regarding Pellicano's arrest on charges stemming from his investigation of Busch, among others.

Other evidence in support of Gorry's MSJ showed that Ovitz personally hired and paid Pellicano to investigate Busch.

***The Litigation***

In November 2008, Busch filed a first amended complaint against Pellicano, Ovitz, Gorry and others. As relevant to Busch's appeal, this operative pleading alleged causes of action against Gorry respectively for intentional infliction of emotional distress, assault, invasion of privacy, eavesdropping in violation of Penal Code sections 632 and 637.2, and violation of the Unfair Competition Law (UCL; Bus & Prof. Code, § 17200).[2]

---

[1]     In her opposition to Gorry's motion for summary judgment, Busch admitted that Pellicano's investigation of her was not initiated because she was a party to any litigation involving Ovitz or artists, but in retaliation for "writing articles about the entertainment business," including articles about Ovitz and artists.

[2]     Addition causes of action for negligent hiring against a defendant phone company based on claims that a phone company employee helped Pellicano tap Busch's telephone line, and against the City of Los Angeles for violation of the Information Practices Act of 1977 (see Civ. Code, § 1798 et seq.) based on claims a police officer unlawfully accessed

4

All of the causes of actions were premised on allegations involving direct wrongful acts by Pellicano, and allegations that he had acted in the course and scope of his retention by Gorry. Further, Busch alleged that Gorry "conspired" with Ovitz and Pellicano to harm Busch.

In June 2014, Gorry filed a motion for summary judgment based on evidence and argument that it did not retain Pellicano, or use the fruits of his services, for any matter involving Busch. Busch opposed Gorry's motion with evidence and argument that Gorry had retained Pellicano around June 2002, in connection with the firm's fee collection lawsuit against Steven Seagal, and that Gorry had, in cooperation with Ovitz, retained Pellicano on several other legal matters that were active around the time that Pellicano investigated Busch. Based on these facts, Busch maintained that it reasonably could be inferred that the firm had also retained Pellicano to investigate Busch during the same general time frame. Further, Busch argued that, because Gorry generally retained Pellicano, it was liable for all of his wrongful acts committed in the course and scope of his retention, including his activities against Busch. Busch submitted a declaration detailing several unnerving incidents during the mid-to-late 2002 time frame, including damage to her car windshield with a an attached note reading "stop," and almost being "run . . . down" by a car with two unknown assailants.

On September 18, 2014, the parties argued Gorry's summary judgment motion to the trial court, and the court issued a minute order granting the motion. On October 3, 2014, the court entered summary judgment in favor of Gorry.

Busch filed a timely notice of appeal.

## DISCUSSION

### I. The Moving Party's Burden on a Motion for Summary Judgment

Busch contends the summary judgment in favor of Gorry must be reversed because the law firm failed to carry its initial burden on its motion for summary judgment (MSJ). We disagree.

---

confidential criminal data bases at Pellicano's behest, are not involved in Busch's current appeal.

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' [Citation.]  The pleadings define the issues to be considered on a motion for summary judgment.  [Citation.]  As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense."  (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.)  If the defendant makes the requisite prima facie showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact.  (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, fn. omitted.)

We review orders granting or denying a summary judgment motion de novo.  (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.)  We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law."  (*Iverson v. Muroc Unified School Dist*. (1995) 32 Cal.App.4th 218, 222.)

As we explain below, the Gorry met its initial burden of negating an element of the offense and Busch failed to present admissible evidence raising a triable issue of material fact as to that element.  Gorry was therefore entitled to summary judgment.

Because the issues involved in a MSJ proceeding are framed by the pleadings, we start there.  Here, Busch's causes of action against Gorry were premised on allegations that the law firm, in cooperation with Ovitz, hired Pellicano to investigate Busch, and thus Gorry was liable for damages caused by Pellicano in the course and scope of his retention.  Further, Busch alleged that Gorry "conspired" with Pellicano to have him harm Busch.  Gorry's MSJ did not fail to carry the initial burden on a MSJ because Gorry presented evidence showing that it did not hire Pellicano to investigate Busch, and that its

6

members had never heard of Busch until it read about her in news stories after the fact. In short, Gorry's evidence undercut Busch's hiring and conspiring theories. A moving defendant meets its MSJ burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); see also, e.g., *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [a moving defendant is entitled to summary judgment when the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail].) Upon showing that it did not hire Pellicano, and that it did not conspire with him to harm Busch, Gorry carried its initial burden.

We reject Busch's argument that Gorry's evidence was not sufficient to support granting its MSJ. We agree with Busch that a law firm is liable when it retains a private investigator that, in the course and scope of the retention, runs amok. (See, e.g., *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 769.) Thus, with respect to any wrongful activities by Pellicano in connection with the *Bernier*, *Casey* and *Advantage Marketing* litigations, it is legally correct to say that Gorry could have liability for those activities, even if Gorry did not authorize Pellicano to engage in any wrongful or unlawful conduct in the course of doing investigations for those three litigations. In other words, even where a law firm hires a private investigator under a contract which directs the investigator to use lawful investigatory tactics only, this would not necessarily cut off liability as to the hiring law firm in the event the investigator went astray and did, in fact, act unlawfully.

Such liability, however, is something quite different from the proposition suggested by Busch — namely, that in hiring an investigator to do one investigation, a law firm becomes liable for every action undertaken by the investigator, even as to those actions that are taken with no relationship to the law firm's retention. The critical lesson to be derived from the cases upon which Busch relies, *Noble v. Sears Roebuck & Co.* (1973) 33 Cal.App.3d 654 and *Stephen Slesinger, Inc. v. Walt Disney Co, supra*, 155 Cal.App.4th 736, is that a law firm is liable for wrongs of an investigator undertaken in

7

"the course and scope" of the investigation for which the investigator was hired. Stated differently, in hiring a private investigator to do one job, a law firm does not make itself generally liable for every action of the investigator in the course of his or her business operations; the firm is only liable for those actions undertaken in the course and scope of the law firm's particular retention.

## II.     Triable Issues of Material Fact

Busch contends the summary judgment in favor of Gorry must be reversed because the record contains "persuasive evidence upon which a jury may find that Pellicano was acting under retention by Gorry." Factually, Busch argues that "[t]here is no shortage of evidence of a relationship between Gorry and Pellicano," and that this evidence would support a finding that Pellicano's acts against Busch were "taken pursuant to his retention by Gorry . . . ." Legally, Busch argues that "[l]iability for the acts of a private investigator is essentially strict — an application of respondeat superior." We are not persuaded that the trial court erred in granted Gorry's MSJ.

Busch argues that Pellicano's investigation of Busch "coincide[ed] exactly" with Gorry's decision to retain the investigator for the *Bernier, Casey* and *Advantage Marketing* litigations, and that this coincidence "implies that the $75,000 paid by Gorry in May 2002 was to finance Pellicano's services concerning Busch." According to Busch: "In effect, Gorry's payment[s] in those three cases provided cover or deniability for Pellicano's investigation not merely (or principally) of those cases, but of Busch and Weintraub as well — the other threat to the sale of Artists." The problem for Busch is that the evidence presented to the trial court explicitly showed that Gorry did not retain or pay Pellicano to investigate Busch, and this defeats the implication that Busch wants drawn from other evidence. Ovitz expressly admitted in discovery responses that he personally hired and paid Pellicano to investigate Busch. Further, Ovitz's discovery responses were consistent with his testimony in the federal criminal trial against Pellicano, and with his declaration submitted in support of Gorry's MSJ, and with the declaration submitted by Gorry partner Christopher Rudd, all of which showed that Gorry did not retain or pay Pellicano to investigate Busch.

8

We reject Busch's argument that the trial court "failed to draw permissible inferences." Busch, no doubt, has a suspicion that, since Gorry retained Pellicano to investigate parties in three cases involving Ovitz, it follows that Gorry also may have retained Pellicano to investigate Busch on behalf of Ovitz. However, Busch's suspicion that Gorry hired Pellicano to investigate her is not evidence showing there was in fact a hiring, particularly where the direct evidence presented by Gorry showed there was no hiring. (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1404 [conjecture and speculation are not sufficient to raise a triable issue of fact against direct evidence to the contrary], quoting *Wiz Technology, Inc. v. Coopers & Lybrand LLP* (2003) 106 Cal.App.4th 1, 10-11.) Because Gorry made a showing supported by direct evidence that there was no hiring of Pellicano to investigate Busch, there can be no reasonable inference of such a hiring, at least not without a showing of some basis for rejecting the direct facts.

Busch focuses on the fact that Busch's DMV and criminal records were accessed very shortly after Gorry sent checks to Pellicano for his retention in the *Bernier*, *Casey* and *Advantage Marketing* litigations. The fact that Busch's DMV and criminal records were accessed in May 2002, one month after Ovitz admits he himself hired Pellicano to investigate Busch is not evidence supporting an inference that Gorry hired Pellicano to investigate Busch, not when such an inference is directly refuted by the direct evidence in the record.

Apart from the lack of evidence in her favor, for the reasons explained above, we reject Busch's legal argument that Gorry may be found liable for Pellicano's activities as a general matter, including his activities involving Busch, even where Pellicano's Busch-directed activities were shown to be unrelated to the law firm's retention of the Pellicano.

III.  **Evidentiary Issues**

Busch contends her evidence "was competent and plainly reliable," and should have, at a minimum, "resulted in a continuance if required to obtain matters in [proper] evidentiary form." It appears Busch is arguing that Gorry's evidentiary objections to her opposition evidence were not well-taken, while her objections to Gorry's evidence

9

(particularly to evidence in its reply papers) were well-taken. We find no ground to reverse based on these claims of error.

We begin with the matter of a continuance. Code of Civil Procedure section 437c, subdivision (h), provides: "If it appears [to the trial court] from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." Subdivision (h) authorizes a continuance, or a denial of a MSJ for that matter, where the opposing party shows that evidence may exist, but could not — "for reasons stated" — be collected and included in the party's opposition papers. We see nothing in Busch's opposition to the MSJ filed by Gorry which suggested that Busch believed there was evidence that may exist but which she could not present for reasons beyond her control. Busch presented the evidence that she had —— namely, that Gorry retained Pellicano to investigate parties in a number of cases in which Gorry represented Ovitz. We see nothing in Busch's opposition papers at which suggest that there may be evidence someplace showing that Gorry did, in fact, retain Pellicano to investigate Busch. We see no claim by Busch in her opposition papers that Gorry destroyed or hid evidence, or obstructed discovery. On the contrary, Busch opposed the MSJ based on her argument that a *reasonable inference* of a hiring could be drawn from the evidence that she was presenting. We see nothing that convinces us subdivision (h) was applicable in Busch's case.

This leaves the evidentiary questions. Here, we begin by noting that the trial court did not rule on any evidentiary objections asserted by either party. Accordingly, under the MSJ procedural law governing at the time the trial court decided Gorry's motion, we will presume that the court considered "any evidence to which it did not expressly sustain an objection." (See *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 526-527.) Further, Busch may challenge the trial court's presumptively overruled objections on appeal, but she has the burden to renew her objections in our court. (*Id*. at p. 534.)

10

To the extent that Busch argues on appeal that she presented admissible evidence, we find her argument unnecessary. We presume, in accord with *Reid*, *supra*, that the trial court overruled Gorry's objections to Busch's evidence. In short, we accept that Busch presented evidence establishing certain predicate facts in support of her position that an inference could be drawn that Gorry hired Pellicano to investigate Busch. We addressed and rejected Busch's inference argument above in rejecting her contention that the trial court erred in granting Gorry's MSJ.

This leaves Busch's argument on appeal that the trial court erred in presumptively overruling her well-taken objections to Gorry's evidence. Here, the only specific claim articulated by Busch in her opening brief is that "[t]he introduction of additional evidence in [Gorry's] reply papers, to which [she] had no opportunity to respond and which was not set forth in the moving Separate Statement, violates both [the requirements of the MSJ statute] and due process." Busch's argument does not support reversal of the trial court's decision to grant Gorry's MSJ because she has failed persuade us that any evidence offered by Gorry in its reply papers contributed the to the court's ruling. In short, Busch has failed to demonstrate any prejudice from the trial court's error, if any, in overruling her objections to Gorry's evidence in its replay papers. (Cal. Const., art. VI, § 13.) As regularly discussed above, the trial court granted Gorry's MSJ because its moving papers showed that the law firm had not hired Pellicano to investigate Busch, and Busch did not present any evidence to create a triable issue of fact on the issue of a hiring.

## DISPOSITION

The judgment is affirmed. Each party to bear its own costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.                    GRIMES, J.

11