[No. A095521. First Dist., Div. Five. Apr. 2, 2002.]

ALEX R. THOMAS & COMPANY, Plaintiff and Appellant, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B. through II.E.

## Counsel

Lanahan & Reilley, Daniel J. Lanahan and Mary P. Derner for Plaintiff and Appellant.

Selvin Wraith Alman, Gary R. Selvin and Mark C. Philips for Defendant and Respondent.

## Opinion

**STEVENS, J.**—Alex R. Thomas & Company (ARTCO) appeals from a judgment entered after the trial court granted summary judgment in favor of ARTCO's insurer, respondent Mutual Service Casualty Insurance Company (MSI). ARTCO contends: (1) MSI failed to establish that the sole or efficient proximate cause of ARTCO's loss was excluded under the MSI policy; (2) ARTCO could maintain its causes of action for bad faith and negligence in the absence of coverage; and (3) the court erred in refusing to continue the summary judgment proceeding under Code of Civil Procedure section 437c, subdivision (h).[1] ARTCO's contentions are without merit, and we affirm the judgment.

## I. Facts and Procedural History

ARTCO is a commercial packer and shipper of pears. Its packing facility includes three icehouses used for the cold storage of pears pending packing and shipping. In October 1998, an ammonia leak occurred in an aluminum refrigeration coil in the south icehouse. ARTCO sought compensation under the MSI policy for the repair and replacement of the affected portion of its

---

[1] Unless otherwise indicated, all further section references are to the Code of Civil Procedure.

refrigeration system.[2] After ARTCO proceeded to repair its refrigeration system, MSI denied ARTCO's claim.

ARTCO filed a complaint against MSI and another of its insurers, Pacific Indemnity Company (PIC).[3] In its first amended complaint, ARTCO asserted causes of action for breach of contract, negligence, and breach of the covenant of good faith and fair dealing. It also sought an award of punitive damages.

### A.   MSI's Summary Judgment Motion

MSI filed a motion for summary judgment or, in the alternative, summary adjudication on each of ARTCO's causes of action and its punitive damages claim. MSI's evidence included the following.

The MSI policy (No. TCT-8-2243228) covered property damage caused by or resulting from a "Perils Insured." In this "all-risk" policy, the Perils Insured were all risks of direct physical loss, except loss or damage specifically excluded or limited by the policy. The policy exclusions included the following: "C. Exclusions. We will not pay for physical loss of or damage to property caused directly or indirectly by any of the following. . . . [¶] 2. *Contamination, corrosion, deterioration,* fungus, pollution, or rust." (Italics added.)

ARTCO's claim for coverage was handled by MSI claim representative Michael Kasel (Kasel). Kasel retained Curt Hamby (Hamby), of the independent adjusting company of McLarens Toplis North America, Inc., to assist in the investigation of ARTCO's claim. Kasel also retained Exponent Failure Analysis Associates (Exponent) to investigate the cause of the ammonia leak.

Meanwhile, ARTCO's refrigeration contractor and consultant, Engineered Mechanical Systems, Inc. (EMS), investigated the cause of the leak. In November 1998, EMS determined there was pitting damage to aluminum coils through much of the middle and south icehouses. EMS informed ARTCO that its refrigeration system was susceptible to hazardous ammonia leaks and recommended that approximately 25 percent of the system be replaced.

---

[2]ARTCO also sought compensation for damage to its pears. MSI paid ARTCO $100,000 pursuant to a policy endorsement providing coverage for chemical injury to stock.

[3]PIC obtained summary judgment against ARTCO as well. PIC's summary judgment is the subject of pending appeal, *Alex R. Thomas & Co. v. Pacific Indemnity Co.* (A095516).

On December 16, 1998, Exponent advised Kasel that tests of ARTCO's refrigeration system had revealed excessive chlorides and iron in the refrigeration lines. It also advised Kasel that ARTCO had discovered pitting elsewhere in the system, and 12 refrigeration cooling units would be replaced.

By letter to ARTCO dated December 23, 1998, MSI reserved its rights under the policy pending additional investigation. Among other things, the letter recited the exclusion for "physical loss of or damage to property caused directly or indirectly by . . . [¶] . . . [¶] [c]ontamination, corrosion, deterioration" as a potential applicable exclusion. The letter also asserted that no actions by MSI would constitute a waiver of its rights under the policy or give rise to an estoppel.

Also on December 23, 1998, Exponent advised Hamby that "[o]ptical and microscopic examination of the pitting, chemical analysis of the tube interior surfaces and metallurgical examination of the aluminum have revealed that the internal pitting may have resulted from impurities within the refrigeration system." Exponent proposed additional work (at a cost of $26,000) to further determine the cause of the pitting. On January 12, 1999, Hamby wrote Kasel and recommended that MSI not conduct this further investigation, unless there arose facts that would indicate a reasonable chance of subrogation from a third party cause of the loss.

In January 1999, ARTCO opted to replace the subject portion of the refrigeration system.

A letter dated February 2, 1999, from MSI's coverage counsel to Exponent, confirmed Exponent's finding that chloride had caused the corrosion in ARTCO's system. Exponent had indicated there would be no corrosion present without the chloride, detected "no evidence of anything other than chloride corrosive pitting," and found the situation to be "a textbook corrosion analysis." MSI's counsel requested that Exponent provide a report giving a technical evaluation and the most likely causes of the condition.

Exponent provided the report on March 26, 1999, concluding that (1) the leak in the aluminum evaporator coil was the result of severe interior pitting occurring over a period of time, and (2) the most likely cause of the pitting was chloride-induced corrosion. The report also noted that the source of the chloride impurity had not been ascertained.

On April 7, 1999, MSI's counsel sent a letter to ARTCO denying coverage for the replacement of the subject portion of ARTCO's refrigeration

system, on the ground that the loss resulted from contamination-caused corrosion and was thus excluded from coverage under the "contamination," "corrosion" and "deterioration" exclusion. In denying coverage, MSI purportedly relied on Exponent's report and the decision of a Washington trial court, in which MSI had obtained summary judgment on similar facts.

Further investigation by experts retained by PIC disclosed details about the potential source of the chloride contamination. In February 2000, Process Engineering, Inc. (Process), reported that the most probable source of the chloride contamination was residual refrigerant. Similarly, Aptech Engineering Services, Inc. (Aptech), reported the following month that the most likely source of the contaminants was the decomposition of residual refrigerant.

### B. ARTCO's Opposition to the Motion

In its opposition to the summary judgment motion, ARTCO argued that MSI had not disproved other potential causes of the loss, but it did not offer any evidence of such a cause. It also argued that MSI's denial of coverage was untimely, since it knew ARTCO had to replace the subject portion of the system quickly and knew the likely cause of the loss in December 1998, but did not deny coverage until April 1999. In addition, ARTCO sought a continuance of MSI's motion pursuant to section 437c, subdivision (h), so it could take the depositions of Kasel and Hamby in regard to its bad faith claim.

### C. The Trial Court's Rulings

The trial court granted MSI summary judgment and summary adjudication on each of ARTCO's causes of action and punitive damage claim. As to coverage, the court concluded that corrosion was the sole cause and the "efficient proximate cause" of ARTCO's loss, and ARTCO had no coverage because loss caused by corrosion was specifically excluded under the policy. The court noted that ARTCO had "offered neither evidence of a source of the chloride nor evidence indicating that the cause of the pitting was anything other than the chloride." The court also found that the absence of coverage precluded a finding of bad faith, and the evidence did not support a finding of bad faith or negligence anyway. Further, the court ruled, ARTCO failed to demonstrate a need to depose MSI's claims personnel.

Judgment was entered, and ARTCO appealed.

## II. DISCUSSION

■ In reviewing the grant of summary judgment, we conduct an independent review to determine whether there are triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485 [72 Cal.Rptr.2d 232].) We construe the moving party's evidence strictly, and the nonmoving party's evidence liberally, in determining whether there is a triable issue. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].)

A defendant seeking summary judgment must show that at least one element of the plaintiff's cause of action cannot be established, or that there is a complete defense to the cause of action. (§ 437c, subd. (*o*)(2).) A defendant insurer, for example, may establish that the insured's loss is excluded from coverage. The burden then shifts to the plaintiff to show there is a triable issue of material fact on that issue. (See § 437c, subd. (*o*)(2); *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768].)

### A. *ARTCO's Coverage Claim*

■ Whether a loss is covered turns on whether it was caused by a covered or excluded peril. Where both covered and excluded perils have contributed to the loss, a proximate cause analysis (often referred to as the "efficient proximate cause" analysis) establishes the predominant or most important cause. (*Sabella v. Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889]; *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 403 [257 Cal.Rptr. 292, 770 P.2d 704] (*Garvey*).) If the predominant cause is a covered peril, the loss is covered by the policy, even if other noncovered causes contributed to it; if the predominant cause is an excluded peril, the loss is not covered. (*Garvey*, *supra*, at pp. 412-413.)

### 1. *Cause of ARTCO's Loss*

■ MSI's evidence established that the cause of ARTCO's loss was the corrosion of aluminum coils, which had resulted from the presence of chloride in the refrigeration system. Exponent's report concluded that the leaks were the result of interior pitting, the pitting was most likely caused by corrosion, and the corrosion resulted from impurities in the refrigeration system. Process and Aptech also concluded the leaks were caused by corrosion, which resulted from contamination.

Both contamination and corrosion are explicitly excluded from coverage under the MSI policy. Contamination in this context has been defined as " 'impairment or impurity result[ing] from mixture or contact with a foreign substance' " (*Richland Valley v. St. Paul Fire & Cas.* (1996) 201 Wis.2d 161 [548 N.W.2d 127, 131]), " 'to render unfit for use by the introduction of unwholesome or undesirable elements' " (*Hartory v. State Auto. Mut. Ins. Co.* (1988) 50 Ohio App.3d 1 [552 N.E.2d 223, 225]), or "a condition of impurity resulting from mixture or contact with a foreign substance." (*American Casualty Co. of Reading, Pa. v. Myrick* (5th Cir. 1962) 304 F.2d 179, 183.) ARTCO itself asserts that the "ordinary understanding of contaminate is 'to make impure, infected, corrupt, radioactive, etc. by contact with or addition of something.' " Under any of these definitions, the presence of chloride in ARTCO's refrigeration system was clearly contamination: it is undisputed that ARTCO's system was a closed system, and chloride should not have been present.

Corrosion, as ARTCO casts it, is "eat[ing] into or wear[ing] away gradually, as by [rusting] or by the action of chemicals.' " To "deteriorate," ARTCO asserts, means " 'to make worse or become worse; lower in quality or value; depreciate.' " It has also been described as "slow-moving disintegration or corrosion of the [insured material] because of external forces." (*Brodkin v. State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 217 [265 Cal.Rptr. 710].) Under these definitions, the action of the chloride contamination corroded or deteriorated the aluminum coils. The cause of ARTCO's loss is thus excluded under the MSI policy.

### 2. *ARTCO's Speculation on Other Causes*

ARTCO does not dispute that chloride contamination caused corrosion, and corrosion was *a* cause of its loss. Nor does it dispute that the loss is not covered if it was caused solely or predominantly by chloride contamination or corrosion. Instead, ARTCO argues that MSI was not entitled to summary judgment because it did not rule out all potential causes of the loss *besides* chloride contamination, thus leaving a triable issue of material fact.

ARTCO presents no authority for its proposition that MSI must present evidence that rules out all imaginable causes of the chloride contamination, corrosion, and deterioration, and definitively disprove every possible cause of the loss in order to satisfy its initial burden as movant on its summary judgment motion. Its reliance on *Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544 [5 Cal.Rptr.2d 674], is misplaced. In *Chevron*, the defendants hired an independent contractor to haul water. The independent

contractor employed a driver to operate the truck, and the driver was injured when he lost control of the truck and it overturned. The driver sued the defendants, claiming they were liable for his injuries because they knew or should have known that the independent contractor would use a defective truck. (*Id.* at p. 547.) The court held that the defendants' motion for summary judgment was properly denied, because the defendants' evidence—although constituting all the evidence available in the case—did not establish they lacked knowledge that the independent contractor would use a defective truck. (*Id.* at pp. 551-552.) In the matter before us, however, MSI *did* have sufficient evidence to establish that the loss was due to corrosion caused by chloride contamination. There is no suggestion in *Chevron* that an insurer must disprove all other possible causes of a loss, at least where, as here, there is no indication there were any.[4]

Indeed, even at this point ARTCO has not articulated any realistic possibility the loss was caused by a covered peril. ARTCO contends that a potential cause of the loss, for which MSI did not account, was the *source* of the chloride that led to the corrosion. As ARTCO points out, MSI admitted in discovery that it was unaware of the source of the chloride. However, MSI provided evidence from the Aptech and Process reports that the chloride derived from residual refrigerant. There is no indication—and ARTCO does not even contend—that this source of the chloride would posit a *covered* peril, such that the source of the chloride would have any bearing on the determination of coverage.

The cases on which ARTCO relies do not support its position, as they addressed situations in which multiple independent causes had already been identified and disclosed. For example, ARTCO asserts *Berry v. Commercial Union Ins. Co.* (9th Cir. 1996) 87 F.3d 387 (*Berry*) "*best* exemplifies why the source of the chloride is a cause of ARTCO's loss which must be considered in determining coverage." (Italics added.) In *Berry*, the insured, a commercial farmer, used copper hydroxide-based fungicides to flush irrigation pipes. The fungicides damaged the pipes. The insurer obtained summary judgment on the ground that the pipes were damaged by deterioration, a peril specifically excluded by the policy. (*Id.* at p. 388.) The court of appeals reversed,

---

[4]ARTCO also cites *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832 [89 Cal.Rptr.2d 540] for the proposition that "[a]s the party moving for summary judgment, [MSI] had the burden of proving the chloride's source." *Binder* merely states that the movant on summary judgment bears the burden of showing the lack of any triable factual issue. It does not suggest that an insurer must determine and negate all potential causes of a leak. Furthermore, in *Binder*, a wrongful termination case, there was evidence the termination was not for good cause and thus actionable. Here, by contrast, there was no evidence the chloride's source would trigger coverage.

holding that the negligent failure of the fungicide manufacturer to warn of the fungicide's adverse effects on aluminum pipes was also a cause of the damages and, under the efficient proximate cause test, was the predominant cause. Because the third party's failure to warn was not an excluded peril, the policy covered the loss. (*Id.* at pp. 391-393.)

According to ARTCO, "*Berry* teaches that where damage to an insured's property results from the introduction of harmful chemicals, how the chemicals were introduced is one of the causes of the loss." We disagree. The court in *Berry* was not interested in the *manner* in which the fungicides were introduced into the irrigation pipes. Moreover, *Berry* involved multiple known causes of loss: the copper in the fungicides, and the manufacturers' failure to warn. The matter before us, on the other hand, involves one cause: chloride contamination. *Berry* does not mandate that we ascertain where a contaminant came from, and ARTCO certainly gives us no reason to venture down that path with respect to the chloride in this case.

Equally misplaced is ARTCO's reliance on *Pioneer Chlor Alkali v. National Union Fire Ins. Co.* (D.Nev. 1994) 863 F.Supp. 1226 (*Pioneer*). In *Pioneer*, chlorine gas traveled through steel tubes, which passed through a liquefier. Brine was forced into the liquefier, cooling the chlorine gas into a liquid state. At some point, however, a rag became lodged in the liquefier, diverting the flow of brine and causing holes in the tubes. Brine passed through the holes, mixing with the chlorine, and the brine/chlorine mixture corroded the tubes, damaged equipment, and led to the emission of chlorine gas. The court concluded that a jury could reasonably find that the efficient proximate cause of the loss was the corrosion (an excluded peril) *or* the rag (a covered peril), and there was thus a triable issue of material fact precluding summary judgment.

ARTCO argues that, for the same reason it was material in *Pioneer* to know how the rag became lodged in Pioneer's equipment, it is necessary to know how chloride was introduced in ARTCO's system. However, the court in *Pioneer* was *not* concerned on this issue with how the rag became lodged in the liquefier. The point was that there was a factual question whether the damage was caused by one of two *identified*, distinct causes: the rag or corrosion. (*Pioneer, supra,* 863 F.Supp. at p. 1232.) Here, by contrast, no one has identified anything but an excluded peril as a cause of the loss, or any substantiated reason to investigate for another cause.

ARTCO also contends that a cause of its loss was the ammonia leak itself, noting it proceeded with the replacement of the system due to the dangers

associated with such leaks. ARTCO's arguments are not entirely clear in this regard. It appears to be arguing that the ammonia leak was a cause of the loss independent from the contamination-induced corrosion. The evidence, however, was that the leak was *caused* by corrosion, and the reasonable inference from such evidence is that the leak was *not* an independent cause. Alternatively, ARTCO may be arguing that the corrosion itself would not have occurred without the ammonia to react with the chloride. No matter how the corrosion occurred, however, it was nevertheless corrosion—an excluded peril—which caused the loss. Finally, ARTCO may be arguing that the noxious nature of the leaking ammonia was a cause of the loss, in that it precipitated the decision to remove and replace the subject portion of the refrigeration system. This argument is specious as well. The question is what caused *the loss*—i.e., the property damage—not what prompted the decision to repair it.

### 3. (*Efficient*) *Proximate Cause*

Because MSI's evidence demonstrated that the loss resulted *solely* from contamination-induced corrosion, it also established that an excluded peril was the proximate cause of the loss. Moreover, even if the ammonia leak could be considered an independent cause of the loss (and a covered peril), MSI's evidence, including the expert conclusions of Exponent, Process, and Aptech, demonstrated that contamination-induced corrosion was the *predominant* cause of the loss, and thus the "efficient proximate cause." Thus, MSI satisfied its burden of establishing that the efficient proximate cause of ARTCO's loss was an excluded peril. (See *Garvey, supra,* 48 Cal.3d at pp. 403, 412.)

### 4. *ARTCO Did Not Demonstrate a Triable Issue of Fact*

Because MSI satisfied its burden of showing an excluded peril, the burden shifted to ARTCO to show the existence of a triable issue of material fact on that issue. (§ 437c, subd. (*o*)(2).) ARTCO failed to do so, as it did not produce any evidence of any potential cause of the ammonia leak other than corrosion, contamination, or deterioration. Thus, the trial court correctly ruled that ARTCO had no coverage under the MSI policy, as a matter of law, for replacement of its refrigeration system.[5]

---

[5]By letter dated January 17, 2002, ARTCO brought to our attention the decision in *Palub v. Hartford Underwriters Ins. Co.* (2001) 92 Cal.App.4th 645, 651 [112 Cal.Rptr.2d 270], in which the court reaffirmed the principle that an insurer is liable if a covered peril is the

B.-E.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III. Disposition

The judgment is affirmed.[6]

Jones, P. J., and Simons, J., concurred.

---

efficient proximate cause of the loss, regardless of other contributing causes. As MSI points out in its letter of January 30, 2002, the parties in that case *agreed* there were multiple causes of the damage. *Palub* is not helpful to our analysis.

*See footnote, *ante*, page 66.

[6]MSI has requested that we rule on its objections to the evidence ARTCO submitted in opposition to the summary judgment motion, as part of our independent review. We need not determine whether the evidence ARTCO submitted was inadmissible, because even if admissible it created neither a triable issue of material fact nor a basis for a continuance under section 437c, subdivision (h).