Filed 12/16/14  McDowell v. Aurora Loan Services CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SYLVIA MCDOWELL et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>AURORA LOAN SERVICES LLC et al.,<br><br>Defendants and Respondents. | A139140<br><br>(Alameda County<br>Super. Ct. No. RG10-534281) |

Sylvia McDowell and Maurice Michael McDowell sued respondent Aurora Loan Services LLC (Aurora) and others for attempting a foreclosure in violation of Civil Code section 2924, based on Aurora's alleged failure to record a valid notice of default before recording a notice of the sale of their property.  The McDowells contend the trial court erred in (1) granting summary judgment against them, (2) denying their motion for a new trial, and (3) striking their request for attorney fees.  We will affirm.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  The Loan

To purchase a four-unit building in Alameda, Sylvia McDowell (Sylvia) obtained a mortgage loan in February 2006 and signed a $641,250 promissory note, secured by a deed of trust against the property.  Sylvia's son, Maurice Michael McDowell (Mike), lives at the property.[1]

---

[1]     Because they have the same last name, we refer to appellants by their first names for clarity, without disrespect.

1.  The McDowells's Defaults

By October 2006, Sylvia was three months behind on her payments and in default on the loan.  After Aurora discussed loss mitigation options with her in November and December 2006, she entered into a forbearance agreement in February 2007, by which she acknowledged her default and promised payment.  The foreclosure process was suspended.  Sylvia failed to pay as agreed, however, and the loan was referred to foreclosure.

In March 2008, Sylvia again acknowledged her default and promised to make payments, and the foreclosure process was suspended a second time.  But Sylvia again failed to pay as agreed.

Under a loan assumption agreement signed in September 2008, Mike was added to the loan and both Sylvia and Mike became liable under the note and deed of trust.  By November 2008, however, the McDowells stopped making payments and failed to pay taxes on the property.

From November 2008 through January 2009, Aurora attempted to contact the McDowells regarding the delinquency and loss mitigation options.  The McDowells told Aurora at one point that they did not know when they could make a payment.  According to Aurora, the McDowells otherwise failed to respond to Aurora's correspondence and voicemail messages.  On February 4, 2009, Aurora restarted the foreclosure process.

2.  February 2009 Notice of Default and Notice of Trustee's Sale

On February 5, 2009, a notice of default and election to sell under the deed of trust was recorded.  A notice of trustee's sale announced Aurora's intent to sell the property at a public auction on May 26, 2009, if the McDowells did not bring the loan current.

Five days before the auction date, the McDowells and Aurora entered into another agreement by which the foreclosure process was suspended (May 2009 Agreement).  In this agreement, the McDowells acknowledged that the foreclosure process could resume without further notice if they defaulted again.  The McDowells subsequently failed to pay as agreed, and the foreclosure process resumed.

2

### 3. July 2009 Trustee's Sale

The property was sold at a trustee's sale on July 9, 2009. A trustee's deed to Aurora was recorded on July 23, 2009.

### B. Aurora's 2009 Unlawful Detainer Litigation

On July 30, 2009, Aurora filed an unlawful detainer action against the McDowells, seeking to have them removed from the property. Aurora alleged that it had acquired ownership and title to the property at the trustee's sale in compliance with Civil Code section 2924 et seq., and all applicable statutory requirements had been satisfied for the sale.[2]

The McDowells denied that Aurora had complied with section 2924 and asserted an affirmative defense based on Aurora's alleged failure to comply with section 2923.5. Section 2923.5 generally requires mortgage beneficiaries to confer with borrowers, or attempt to do so with due diligence, before recording a notice of default, and to include with the notice of default a declaration of their compliance.

In addition, the McDowells filed a cross-complaint against Aurora seeking to set aside the trustee's sale and obtain other relief based on Aurora's failure to comply with section 2923.5. A default on the cross-complaint was entered against Aurora in September 2009.

After a trial on Aurora's unlawful detainer complaint, the court issued a tentative decision and proposed statement of decision in favor of the McDowells on May 17, 2010. The court noted the McDowells's claim that Aurora's notice of default and the trustee's deed were subject to the requirements of section 2923.5, subdivision (b), and that Aurora had not complied with the statute's due diligence requirements or provided a suitable declaration setting forth its efforts to contact the borrowers. The court observed that, at trial, Aurora never introduced the notice of default into evidence; the McDowells testified that Aurora had never contacted them before the February 2009 notice of default; and Aurora had failed to respond to the McDowells's allegations in their cross-complaint.

---

[2]  Unless otherwise indicated, all statutory references hereafter are to the Civil Code.

3

Further, the court observed, the declaration on the notice of default averring compliance with section 2923.5, subdivision (b) did not constitute a declaration under Code of Civil Procedure section 2015.5. The court concluded: "The court finds that in order for [Aurora] to prove its right to possession of the property, it has the burden of proving that it perfected title to the property in compliance with the law. Unfortunately, [Aurora] has not proven that it complied with the declaration requirements of [section 2923.5]. Therefore, once again, [Aurora] has not complied with the law and cannot obtain possession."[3]

On June 10, 2010, judgment was entered in the unlawful detainer action, finding that Aurora was not entitled to recover possession of the premises, and deeming the July 2009 trustee's deed to be canceled and rescinded.

In July 2010, Aurora filed a notice of appeal, but abandoned the appeal a few days later.

C. Aurora's New Notice of Trustee's Sale

The McDowells's loan remained in default. Without issuing a new notice of default, Aurora caused the issuance of a new notice of trustee's sale in August 2010, setting a foreclosure sale date of September 7, 2010.

D. The Present Litigation

1. The McDowells's Initial Complaint and Injunctive Relief

On September 1, 2010, the McDowells filed their complaint in this action, seeking injunctive relief and asserting a cause of action for wrongful foreclosure based on the

---

[3]    The parties recognize that the trial court's ruling may conflict with *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208 (*Mabry*), which was issued after the trial court's order but before entry of judgment. *Mabry* ruled that a declaration under section 2923.5 did not have to be "custom drafted"; it was sufficient "that the notice track the language of the statute itself," and the only remedy available for a violation of section 2923.5 was a postponement of the foreclosure sale. (*Mabry, supra*, 185 Cal.App.4th at p. 235.) The McDowells assert that it is irrelevant if the trial court's ruling is contrary to *Mabry* because the judgment in the unlawful detainer action has become final. We need not address the issue.

allegation that Aurora violated sections 2924 through 2924k by causing the August 2010 notice of trustee's sale to be recorded without first recording a new notice of default and election to sell.

On September 2, 2010, the court issued a temporary restraining order precluding Aurora from conducting a trustee's sale of the property. In November 2010, the court granted a similar preliminary injunction, on the condition that the McDowells make monthly payments of $3,900.30 for six months. In April 2011, the court dissolved the preliminary injunction; Aurora explains it was dissolved because the McDowells had failed to make the required payments.[4]

### 2. First Amended Complaint

In January 2011, the McDowells filed their first amended complaint, seeking a permanent injunction and alleging causes of action for wrongful foreclosure, declaratory relief, and quiet title.

In February 2011, Aurora caused to be recorded a Notice of Rescission of the Notice of Default, rescinding the February 2009 notice of default, and a Notice of Withdrawal of the Notice of Trustee's Sale of August 2010.

The McDowells and Aurora then filed motions for judgment on the pleadings. In September 2011, the court denied the McDowells's motion and granted Aurora's motion, with leave to amend. In granting Aurora's motion, the court questioned how a wrongful foreclosure claim could be stated if no foreclosure sale had occurred.

### 3. Second Amended Complaint

In October 2011, the McDowells filed their second amended complaint, asserting causes of action for an *attempted* foreclosure in violation of sections 2924 to 2924k, declaratory relief, and quiet title. They alleged that, when the notice of trustee's sale was recorded in August 2010, the only recorded notice of default was the one recorded in

---

[4] Aurora filed a request for judicial notice on April 1, 2014, seeking judicial notice of the order dissolving the preliminary injunction as well as an assignment of the deed of trust from Aurora to another entity, and other documents. We grant the unopposed request.

February 2009, which was the subject of the 2009 unlawful detainer action and rescinded by Aurora in February 2011. They did not seek injunctive relief.

Aurora filed a demurrer to the second amended complaint, which the court overruled in part and sustained in part in March 2012, leading to the dismissal of the McDowells's claims for declaratory relief and quiet title. Only the cause of action for a wrongful attempted foreclosure remained.[5]

### 4. Aurora's Summary Judgment Motion

In December 2012, Aurora filed a motion for summary judgment, supported by declarations and a statement of undisputed material facts, which set forth the facts summarized *ante*. In essence, Aurora argued that the McDowells's claim for an attempted foreclosure in violation of section 2924 failed as a matter of law because California does not recognize a cause of action for attempted wrongful foreclosure. Further, Aurora argued, the McDowells were barred from pursuing the claim because Sylvia does not reside in the property, they waived their right to a new notice of default, they had unclean hands, and they failed to establish the elements of a claim for wrongful foreclosure.

The McDowells opposed the motion, insisting there must be a cause of action when a creditor has attempted to conduct a nonjudicial foreclosure sale without following California statutes requiring the service of a notice of default. The McDowells also addressed the remainder of Aurora's arguments.

On March 5, 2013, the court granted Aurora's motion for summary judgment. First, the court concluded there was no cause of action for wrongful attempted foreclosure: "Having reviewed the parties' written submissions, the Court agrees with Defendant's assertion that California does not recognize a cause of action for Wrongful

---

[5] In February 2013, the court denied the McDowells's motion for leave to file a third amended complaint. The court also noted that the McDowells did not appear to have a valid claim for attorney fees, and set a hearing on an order to show cause regarding its intent to strike their attorney fees request from the second amended complaint. The parties represent that the court ultimately struck the McDowells's request for attorney fees in March 2013, but they provide no citation to the record.

6

Attempted Foreclosure. [Citations.]" Second, the court found the McDowells had not suffered any damages: "The Court also holds that Plaintiffs have not shown that they have sustained any damages based upon their wrongful attempted foreclosure theory. Plaintiffs' assertion that they were damaged because they were forced to incur attorney's fees and related costs is without merit." Finally, the court took judicial notice of a prior order in the case, which indicated that the McDowells had argued in opposition to a demurrer that they were not seeking an injunction.

A judgment of dismissal was entered on March 26, 2013.

### 5. The McDowells's New Trial Motion

In April 2013, the McDowells sought a new trial on the ground that the court had erred in concluding there was no cause of action for wrongful attempted foreclosure. The motion was denied on May 29, 2013.

### 6. Appeal

The McDowells's notice of appeal challenges the judgment and the order denying a new trial.

## II. DISCUSSION

We have considered all of the McDowells's contentions and address them to the extent necessary to resolve the appeal.

### A. Summary Judgment

In reviewing the grant of summary judgment, we conduct an independent review to determine whether there is a triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We construe the moving party's evidence strictly, and the nonmoving party's evidence liberally, in determining whether there is a triable issue. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 20; *Alex R. Thomas & Co. v. Mutual Service Casualty Ins. Co.* (2002) 98 Cal.App.4th 66, 72 (*Thomas*).)

A defendant seeking summary judgment must show that at least one element of the plaintiff's cause of action cannot be established, or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to show there is a triable issue of material fact on that issue. (See Code Civ. Proc., § 437c, subd. (p)(2); *Thomas*, *supra*, 98 Cal.App.4th at p. 72.)

In the matter before us, only the purported cause of action for an attempted foreclosure in violation of section 2924 remained in the second amended complaint. The McDowells based this claim on the allegation that Aurora had violated sections 2924 through 2924k because it failed to issue a new notice of default before it issued the August 2010 notice of sale. Section 2924 provides that, to exercise the power of sale in a trust deed or mortgage, "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default." (§ 2924, subd. (a)(1).)

We consider (1) whether there is a cognizable cause of action for wrongful attempted foreclosure—that is, for wrongful foreclosure before a foreclosure sale; and (2) whether the McDowells's claim fails for lack of evidence of damages.

### 1. Cause of Action Issue

Courts have recognized a cause of action for wrongful foreclosure where a foreclosing party has failed to follow the requirements for foreclosure set forth in section 2924. Although the parties in this case phrase the debate as whether there is a cause of action for attempted wrongful foreclosure or wrongful attempted foreclosure, a more precise statement of the issue is this: May a cause of action be maintained for failure to follow the statutory requirements pertinent to foreclosure, where, as here, a foreclosure sale has not yet occurred?

We begin with a look at the cause of action for wrongful foreclosure. "Wrongful foreclosure is an action in equity, where a plaintiff seeks to *set aside* a foreclosure sale." (*Santos v. Countrywide Home Loans* (E.D.Cal., Nov. 6, 2009, No. Civ. 2:09-02642) 2009

8

WL 3756337 at p. *3 (unpub.) (*Santos*), italics added.) It may also allow a plaintiff to recover damages incurred *as a result of* the wrongful sale. (*Munger v. Moore* (1970) 11 Cal.App.3d 1, 7 ["[The] rule is that a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust"].) An unlawful or fraudulent sale is a required element of the cause of action. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 [citing elements as unlawful or fraudulent sale, prejudice to the borrower, and tender or excuse from tender].)

If the foreclosure sale has *not* occurred, there is no sale to set aside, and the damages that would have arisen from a sale have not been incurred. For this reason, it is frequently said that there is no claim for wrongful foreclosure unless a foreclosure sale has taken place. (E.g., *Rosenfeld v. JPMorgan Chase Bank, N.A.* (N.D.Cal. 2010) 732 F.Supp.2d 952, 961 [wrongful foreclosure claim, based on lack of authority to foreclose under § 2924 due to the failure to contact the borrower before issuing a notice of default in violation of § 2923.5, was premature because no foreclosure sale had taken place]; *Vega v. JPMorgan Chase Bank, N.A.* (E.D.Cal. 2009) 654 F.Supp.2d 1104, 1113 [a wrongful foreclosure claim, based on an alleged violation of § 2923.5, is premature before the foreclosure sale]; see *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46 [no legal basis for claim seeking damages or declaratory relief to determine whether foreclosing party had authority to foreclose (on ground it was neither the current beneficiary of the deed of trust or its agent), because §§ 2924–2924k do not provide for a "preemptive suit challenging standing"]; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 [borrower could not sue before the foreclosure sale to determine a nominee's authorization to proceed with foreclosure on behalf of the note holder, because such actions "would fundamentally undermine the

9

nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"].) [6]

Calling it a claim for wrongful *attempted* foreclosure does not change the result. (See *Santos, supra*, 2009 WL 3756337 at p. *3 [no cause of action for "wrongful threatened foreclosure" based on a failure to comply with § 2924, and "the overwhelming majority of states like California who provide for nonjudicial foreclosure, do not recognize such a cause of action"]; see also *Reese v. First Mo. Bank & Trust Co.* (Mo. 1987) 736 S.W.2d 371, 373, fn. 4 [out of the 29 states that conduct nonjudicial foreclosures, only Georgia, Massachusetts, and North Carolina recognize a cause of action for attempted wrongful foreclosure].)

On the other hand, courts have allowed a pre-sale wrongful foreclosure claim to proceed to the extent it sought *injunctive* relief—such as a postponement of the foreclosure sale—in order to prevent the future sale and resulting harm. (*Nguyen v.*

---

[6]    Numerous federal decisions express this general point of view. (E.g., *Schneider v. Bank of America N.A.* (E.D.Cal., Mar. 26, 2013, No. 2:11-cv-2953) 2013 WL 1281902 at p. *27 (unpub.) [wrongful foreclosure claim, based on an alleged failure to provide and post proper notice of sale and default under § 2924, subd. (b) is premature before the foreclosure sale]; *Martin v. Litton Loan Servicing LP* (E.D.Cal., Jan. 16, 2013, No. 2:12-cv-00970) 2013 WL 211133 at p. *10 (unpub.) [wrongful foreclosure claim, based on erroneous amount on notice of default and other grounds, is premature before the foreclosure sale]; *Pugh v. JPMorgan Chase Bank, N.A.* (E.D.Cal., Oct. 22, 2013, No. 2:13-cv-01141) 2013 WL 5739147 at p. *3 (unpub.) [wrongful foreclosure claim, based on defendants' alleged lack of power to exercise power of sale, is premature before foreclosure sale]; *McGuire v. Recontrust Co., N.A.* (E.D.Cal., Sep. 30, 2012, No. CIV S-11-2787) 2012 WL 4510675 at p. *3 (unpub.) [no party can be liable for wrongful foreclosure under § 2924 in the absence of a foreclosure sale]; *Swanson v. EMC Mortg. Corp.* (E.D.Cal., Oct. 29, 2009, No. CV F-09-1507) 2009 WL 3627925 at p. *12 (unpub.) [wrongful foreclosure claim is premature before the foreclosure sale]; *Ramirez v. Kings Mortg. Servs., Inc.* (E.D.Cal., Nov. 8, 2012, No. 1:12-cv-01109) 2012 WL 5464359 at p. *6 & fn. 1 (unpub.) [same]; *Bogdan v. Countrywide Home Loans* (E.D.Cal., Mar. 26, 2010, No. CIV-F-09-1055) 2010 WL 1241540 at p. *8 (unpub.) [same]. Accord *Schneider v. Bank of America N.A.* (E.D.Cal., May 21, 2014, No. CIV S-11-2953) 2014 WL 2118327 at p. *14, fn. 36 [not all wrongful foreclosure claims before foreclosure sale are premature, citing *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, which, as discussed *post*, allowed claims for *declaratory relief and injunctive relief* based on wrongful foreclosure before the foreclosure sale].)

*JPMorgan Chase Bank N.A.* (N.D.Cal., May 15, 2013, No. 12-CV-04183) 2013 WL 2146606 at p. *4 (unpub.) (*Nguyen*) [injunctive relief sought after foreclosing party recorded a notice of sale, which reflected the intent to sell the property]; *Vong v. Bank of America, N.A.* (E.D.Cal., May 22, 2013, No. CIV. S-12-2860) 2013 WL 2254243 at p. *8 & fn. 20 (*Vong*) [claim to enjoin foreclosure sale, where notice of sale pending]; see *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1057 (*Intengan*) [declaration of compliance with § 2923.5 was insufficient to sustain demurrer to wrongful foreclosure claim that would postpone foreclosure sale pending statutory compliance]; *Pfeifer v. Countrywide Home Loans, Inc*. (2012) 211 Cal.App.4th 1250, 1280-1281 [failure to tender indebtedness did not bar claim for declaratory relief or injunctive relief based on wrongful foreclosure, before foreclosure sale].)  In short, a cause of action for wrongful foreclosure, before a foreclosure sale, may remain in the case as the basis for injunctive relief. (*Vong, supra,* 2013 WL 2254243 at p. *8 & fn. 20 [although wrongful foreclosure claim is permissible to enjoin a foreclosure sale, based on the allegation of failure to comply with § 2923.5 before recording the notice of default, the claim is premature "[t]o the degree plaintiff seeks *damages* arising from a wrongful foreclosure due to an alleged lack of authority to foreclose"].)

Here, the McDowells's second amended complaint—the operative pleading at the time of the summary judgment motion—*does not seek injunctive relief*.  It seeks only damages (in the form of attorney fees and costs, discussed *post*).  Indeed, the McDowells represented in their opposition to a demurrer that they were *not* seeking an injunction.  Furthermore, Aurora withdrew the notice of the sale of the property, and the parties' evidentiary submissions disclosed no imminent foreclosure sale to be enjoined.  Because there has been no foreclosure sale and the McDowells's operative pleading does not seek to enjoin one, the McDowells have no cause of action as a matter of law.

The McDowells's arguments to the contrary are unpersuasive.  Primarily, they rely on our decision in *Intengan*, *supra*, 214 Cal.App.4th 1047.  There, a borrower had asserted a wrongful foreclosure claim based on, inter alia, the alleged failure to contact her before the notice of default was issued, in violation of section 2923.5.  (*Id*. at

11

p. 1052.)  No foreclosure sale had yet occurred, although a notice of sale had been recorded.  (*Id*. at pp. 1050, 1053.)  The trustee and mortgage servicer filed a demurrer and sought judicial notice of a declaration attached to the notice of default, averring that the servicer had complied with the statute.  (*Id*. at p. 1056.)  We concluded that judicial notice could not be taken of the facts asserted in the declaration, and in any event the declaration's averments would only create a factual dispute precluding dismissal at the demurrer stage.  (*Id*. at pp. 1057-1058.)  On that basis, we found that the borrower had stated a cause of action for wrongful foreclosure.  (*Id*. at p. 1058.)  We also noted, however, that there was no remedy for a violation of section 2923.5 *except a delay of the foreclosure sale*.  (*Id*. at p. 1058, fn. 4.)  In short, the borrower could maintain her cause of action for wrongful foreclosure, before the foreclosure sale occurred, in order to seek the injunctive relief of postponing the sale.

Intengan is certainly of no help to the McDowells.  In the first place, *Intengan* did not address the precise issue in this case, since there was no argument in *Intengan* that a wrongful foreclosure claim could not be maintained due to the absence of a foreclosure sale.  A case is not precedent for a matter it did not decide.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)  Moreover, the wrongful foreclosure claim recognized in *Intengan* sought injunctive relief, and there was a pending notice of sale.  Here, the McDowells did not seek injunctive relief in their second amended complaint, and the undisputed evidence was that there was no pending notice of sale.

The McDowells's reliance on *Nguyen* is similarly misplaced.  There, the court stated,  "As *the complaint prays for an injunction* based on allegedly wrongful foreclosure, the court finds it appropriate to examine the merits of the wrongful foreclosure claim, even though no sale has yet taken place."  (*Nguyen, supra*, 2013 WL

12

2146606 at p. *4, italics added.)  Here, the operative pleading in this case—the McDowells's second amended complaint—does not pray for an injunction.[7]

#### 2.  No Damages

Even if the law recognized a pre-sale cause of action for damages based on a violation of section 2924, summary judgment in this case was still appropriate because the McDowells did not allege, or produce evidence of, any recoverable damages.

Because no foreclosure sale has occurred, the McDowells have not suffered the damages customarily awarded in a wrongful foreclosure action.  (See *Munger, supra*, 11 Cal.App.3d at p. 11 [damages awarded in a wrongful foreclosure action are measured by "the value of the property at the time of the sale in excess of the mortgages and liens against said property"].)  In their second amended complaint, they alleged that they incurred damages "according to proof, including the out of pocket costs and attorneys' fees incurred in prosecuting this action."

In support of its summary judgment motion, Aurora presented excerpts from the transcript of Sylvia's deposition, in which she testified that she had to hire an attorney to "take care of this," and her attorney claimed that the out-of-pocket costs alleged in the second amended complaint referred to statutory costs.  From this evidence, it is reasonable to infer that the McDowells did not incur any damages or loss other than the costs and fees associated with prosecuting the lawsuit.

The burden shifted to the McDowells to establish a triable issue of material fact.  In their opposition to the summary judgment motion, the McDowells did not submit

---

[7]     The McDowells also contend that the court in *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052 stated that plaintiffs may enjoin a wrongful foreclosure sale even if the sale has not occurred.  It did not.  In *Chavez*, the court ruled that the borrower had alleged a claim for breach of a modification agreement and was not required to allege tender in order to state a cause of action for wrongful foreclosure, based on a foreclosure sale that had *already* occurred.  (*Id*. at pp. 1056, 1062.)  In any event, even if *Chavez* allowed a cause of action to enjoin a sale, the McDowells's second amended complaint does not seek to enjoin a sale.

evidence of expenses other than those incurred in bringing the lawsuit. There is, therefore, no triable factual issue.

The trial court concluded that the McDowells's attorney fees and costs were not recoverable damages. The McDowells do not establish that the court was wrong in this respect. (See *Ramirez,* 2012 WL 5464359 at p. *7, fn. 1 ["in the absence of a foreclosure sale, it is difficult to ascertain what damages would be suffered to support" a claim for attempted wrongful foreclosure, as "any resulting damages would be merely speculative"].) Instead, they refer us to *Intengan*, *Nguyen,* and *Vong*, pointing out that those cases allowed a wrongful foreclosure claim before a foreclosure sale. But in those cases, the borrower had sought injunctive relief. They did *not* hold that evidence of damages is unnecessary when injunctive relief is *not* requested. Nor did they hold that attorney fees and costs incurred in prosecuting the lawsuit constitute recoverable damages sufficient to support a cause of action.

The McDowells fail to establish that the trial court erred in granting summary judgment.[8]

### B. Motion for New Trial

In their motion for a new trial, the McDowells contended the trial court erred in granting summary judgment because, according to the McDowells's interpretation of *Intengan*, they had a cause of action for an attempted foreclosure in violation of section 2924. The court denied their motion, and the McDowells now claim this was error. As we have just explained, however, the court did not err in granting summary judgment. It therefore did not err in denying the motion for a new trial.

### C. Order Striking the McDowells's Request for Attorney Fees

In September 2011, the trial court set a hearing on an order to show cause regarding the court's intent to strike the McDowells's request for attorney fees from their second amended complaint. The McDowells contend the court erred by setting this

---

[8] Aurora asserts a number of other grounds for affirmance. Because the grounds relied upon by the trial court were sufficient to resolve this appeal, we need not address these other grounds.

14

hearing and subsequently striking their claim for attorney fees. Their argument in their opening brief in this appeal is as follows: "Plaintiffs' position regarding the trial court's action in this regard is set forth in its opposition to the order to show cause (Vol. IV, AA:934-987), and will not be repeated here, except to say that should this Court agree with plaintiffs and reverse the order granting summary judgment, plaintiffs should not be precluded on remand from seeking attorneys' fees in the trial court."

Because we do not reverse the order granting summary judgment, the McDowells's request is moot and they fail to establish prejudicial error.

## III. DISPOSITION

The judgment and the order denying appellants' motion for a new trial are affirmed.

_____

NEEDHAM, J.

We concur.

_____

SIMONS, Act. P. J.

_____

BRUINIERS, J.