Filed 10/29/24  Smith-Martin v. State Farm General Insurance Co. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SANDRA D. SMITH-MARTIN, et al., | B333554 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. 21STCV11434 |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Douglas W. Stern, Judge.  Affirmed.

Shaver Legal, Cody J. Shaver; McCathern, Evan Selik and Christine Zaouk for Plaintiffs and Appellants.

Pacific Law Partners, Jenny J. Chu and Weiland S. Chiang for Defendant and Respondent.

—————————

Plaintiffs Sandra D. Smith-Martin and Sterling K. Martin (Plaintiffs) filed a claim with their homeowners' insurance company—State Farm General Insurance Company (State Farm) —after a leaky pipe caused damage to their condominium. State Farm denied the claim, citing policy exclusions for losses caused by wear, tear, or deterioration, as well as continuous or repeated seepage or leakage of water. Plaintiffs sued State Farm, asserting causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. State Farm moved for summary judgment, which the trial court granted.

On appeal, Plaintiffs argue they submitted sufficient evidence to raise triable issues of fact concerning whether State Farm erroneously denied their claim and conducted a thorough investigation. Plaintiffs also argue the trial court made evidentiary errors and denied them the opportunity to address certain issues at the hearing. We reject Plaintiffs' arguments and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The loss*

On March 17, 2020, Plaintiffs discovered water leaking from a pipe in their kitchen ceiling. The leak caused a bubble of water to form on the ceiling, measuring approximately one foot across. Water was running down the wall and had accumulated on the kitchen counters and floor.

Martin cut a hole in the ceiling drywall and placed a basin under the leak to collect the water. The basin was about six inches across and three inches deep. Martin used tubing to connect the basin to a five-gallon bucket on the kitchen counter.

Water would drain from the basin into the bucket by way of the tubing.

Plaintiffs filed a claim with State Farm under their homeowners' insurance policy. The policy insures Plaintiffs for accidental direct physical loss to their property, subject to explicit exceptions for losses not insured. The policy excludes from coverage losses resulting from "wear, tear, . . . deterioration, . . . latent defect or mechanical breakdown," as well as losses caused by "corrosion, electrolysis or rust." The policy also excludes any loss caused by "water damage," "regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these." The policy defines water damage to include the "continuous or repeated seepage or leakage of water or steam from a . . . plumbing system." We refer to this as the CRSL exclusion.

State Farm retained Reagan Katz to inspect the loss and handle the claim on its behalf. Katz inspected Plaintiffs' property on March 23, 2020, which he documented in the claim file. According to Katz's report, he was unable to see the actual leak because a ceiling joist blocked his view. However, he noticed a single drip of water from the joist every second or second and a half. Martin reportedly told Katz the main water was turned on during the inspection and the current flow rate was the same as when he first noticed the leak.

Katz told Plaintiffs he could not confirm or deny coverage until he received confirmation from a plumber regarding the source of the leak. Katz wrote in the claim file that the loss was the result of continuous or repeated seepage or leakage.

He noted he would prepare a denial of claim "for review once plumber report received to confirm [cause of loss]."

Plaintiffs hired a plumber to repair the leak and sent Katz an invoice for the work. The invoice states the plumber repaired a "[f]resh water leak at kitchen ceiling." It does not provide information about the cause of the leak.

State Farm denied the claim in a letter dated April 16, 2020. According to the letter, "[w]ater has been leaking from the cold water supply line in the ceiling above the kitchen, causing damage to the ceiling, walls and cabinets below." State Farm determined the predominant cause of the failure "is most likely wear, tear, deterioration, latent defect, mechanical breakdown and/or workmanship," which resulted in a "continuous or repeated leakage or seepage of water." State Farm concluded the policy excludes coverage for all the damage to Plaintiffs' property.

## 2. *Plaintiffs' complaint*

About a year after State Farm denied the claim, Plaintiffs filed a complaint against it, asserting causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs alleged State Farm breached their homeowners' policy by failing to provide coverage for damage caused by a sudden and accidental water loss. According to Plaintiffs, State Farm fabricated facts to support the denial of the claim, failed to investigate the claim thoroughly, and ignored information supporting coverage. They alleged State Farm breached the implied covenant of good faith and fair dealing by—among other things—failing to respond timely to their correspondences, misrepresenting policy provisions, failing

4

to conduct an adequate investigation, failing to pay the claim, and failing to comply with regulations.

### 3.     *State Farm's motion for summary judgment*

State Farm moved for summary judgment, asserting Plaintiffs could not prove it breached the homeowners' policy. According to State Farm, the loss was the result of a pinhole leak in a cold-water supply line, which was caused by wear, tear, deterioration, or a latent defect. State Farm argued any resulting losses to Plaintiffs' property were caused by continuous or repeated leakage or seepage from the damaged pipe. State Farm asserted Plaintiffs could not prevail on their claims because their policy excludes coverage for both types of losses.

State Farm supported its motion with a declaration from George Clayton Mitchell, who is a general contractor and the president of a construction and architecture consulting firm. Mitchell inspected the property and reviewed the claim file, including photographs of the damage and a video Plaintiffs took while the pipe was leaking.

Mitchell determined the damage to Plaintiffs' property was caused by a pinhole leak in a cold water supply line located in a kitchen soffit, which is an enclosed box-shaped area between the top of the kitchen cabinets and the ceiling. He explained the pipe was in a protected location, and there is no evidence of an external force or impact that could have caused trauma to it. He concluded the leak must have been caused by long-term corrosion resulting from either a latent defect or wear, tear, and deterioration of the pipe.

Mitchell also provided an opinion on the cause of the water damage. According to Mitchell, the leak slowly dripped onto the soffit until it became saturated and a bubble appeared

5

on the ceiling. The damage was the result of continuous leakage of water over time, rather than a sudden discharge of a large amount of water all at once. Mitchell based his opinion on the lack of signs of major spraying as well as Plaintiffs' video of the leak, which apparently showed water dripping from a wooden joist at a relatively slow rate. Mitchell also pointed to evidence that Plaintiffs were able to contain the leak using a "catch basin system" that drained the water into a five-gallon bucket. He noted that Plaintiffs said they emptied the bucket relatively infrequently, which indicated the leak was very small. According to Mitchell, had there been a sudden burst in the supply line causing water to spray, Plaintiffs' catch system would not have worked and the area would have flooded.

4.   ***Plaintiffs' opposition***

Plaintiffs opposed the motion for summary judgment, arguing their policy included an ensuing loss provision that provided coverage for water damage caused by wear and tear. Plaintiffs also asserted there were triable issues of fact as to whether the loss resulted from continuous or repeated leakage or seepage from the supply line. Plaintiffs also argued there were disputed issues of fact concerning whether State Farm denied the claim before it completed an investigation, determined the cause of the loss, or retained an expert to investigate the cause.

Plaintiffs supported their opposition with excerpts from their own depositions and the deposition of their mitigation expert. In those excerpts, Plaintiffs testified that the water was spraying—rather than dripping—from the leak in the pipe. Plaintiffs said they had to turn off the main water nearly all the time—including during the inspection—because the five-gallon bucket would rapidly fill up and need to be emptied. Plaintiffs'

mitigation expert testified that he inspected the property and observed a significant amount of water damage from the leak.

In addition to the deposition testimony, Plaintiffs submitted a declaration from Sandra Moriarty, who is an expert on the handling of first-party insurance claims. Moriarty opined that State Farm's investigation fell below industry standards and practices, which resulted in an improper coverage denial. She criticized State Farm for failing to obtain detailed information from the plumber who made the repairs or from Plaintiffs' emergency water restoration company. She also criticized State Farm for refusing to conduct another inspection with Plaintiffs' public adjuster.[1] According to Moriarty, State Farm based its denial decision on misrepresentations in the claim file, including that the water had been turned on during the inspection.

Plaintiffs also submitted a declaration from a plumber, Jake Parker. According to Parker, leaks in copper piping can be caused by corrosion, failure of a pressure regulator, an increase in pressure from the city supply, fittings installed too close together, or poor chemical composition of the water. Parker asserted an inspection of Plaintiffs' pipe would be required to determine conclusively if corrosion caused the leak. Parker concluded that the leak occurred suddenly from an unknown cause.

---

[1] A public adjuster "is a person who, for compensation, acts on behalf of or aids in any manner, an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance . . . ." (Ins. Code, § 15007.)

According to Parker, the other damage to Plaintiffs' property was caused by water spraying from the pipe for a short period of time. Parker pointed to the lack of rot, mold, and deterioration of drywall and plywood, which indicates the leak did not occur over an extended period. Parker stated it was probable that 11 to 39 gallons of water would have been released from the leak per hour.

## 5. *The ruling, judgment, and appeal*

At the hearing on the motion, Plaintiffs conceded there was not "so much of a dispute" about whether the damage to the pipe resulted from wear and tear. Instead, the main dispute was whether the policy covered the ensuing water damage. Plaintiffs argued their evidence showed the water damage was covered because it occurred suddenly. State Farm responded that the undisputed evidence showed the water was dripping at a slow rate and any resulting damage was excluded under the policy's CRSL exclusion.

After taking the matter under submission, the court granted State Farm's motion for summary judgment. The court concluded State Farm had met its initial burden to show the policy excludes coverage for Plaintiffs' losses. The court determined there were no disputed issues of fact concerning whether the leak resulted from wear, tear, or deterioration. The court explained that Parker's declaration "simply speculates on potential external forces that may have cause[d] the pinhole in the pipe." The court next determined there were no triable issues concerning whether the water damage was the result of continuous or repeated leakage or seepage. The court reasoned that, although the facts of the case did not show leakage of an extended duration, the policy excludes losses caused by

8

continuous or repeated leakage or seepage " 'regardless of whether the loss occurs suddenly or gradually.' "

The court declined to consider Plaintiffs' evidence that State Farm improperly handled the claim. The court explained that such evidence was relevant only to whether State Farm acted in bad faith. However, to prove bad faith, Plaintiffs had to show State Farm improperly denied their claim. Because Plaintiffs did not present evidence that State Farm improperly denied their claim, their evidence of bad faith was irrelevant.

The court entered judgment for State Farm, and Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs argue the trial court made procedural and substantive errors in connection with State Farm's motion for summary judgment. They assert the court erred in finding no disputed issues of material fact concerning the adequacy of State Farm's investigation and whether the policy covered the damage to their property. They also argue the court erroneously sustained objections to Parker's declaration and denied them the opportunity to address certain issues at the hearing.

1.    *Standard of review and relevant law*

Summary judgment is proper if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to prevail on a cause of action as a matter of law. (Code. Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant moving for summary judgment has the initial burden to show the plaintiff cannot establish one or more elements of the challenged cause of action or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)

A defendant meets its burden by presenting affirmative evidence that negates an essential element of the plaintiff's claim, or by submitting evidence that demonstrates "the plaintiff does not possess, and cannot reasonably obtain, needed evidence" to prove an essential element of the plaintiff's claim. (*Aguilar*, at p. 855.)

If the defendant makes a sufficient showing, the burden then shifts to the plaintiff to demonstrate a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We "view the evidence in a light favorable" to the nonmoving party, "resolving any evidentiary doubts or ambiguities" in that party's favor. (*Saelzler*, at p. 768.) We consider all evidence the parties submitted in connection with the motion, except that which the court properly excluded. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

**2.      *State Farm met its initial burden***

As we understand it, Plaintiffs' complaint alleged State Farm breached their homeowners' policy by denying coverage for two categories of losses to their property: (1) damage to the pipe; and (2) damage caused by water leaking from the pipe. State Farm presented sufficient evidence that Plaintiffs' policy excludes coverage for both types of losses.

10

With respect to the damage to the pipe, State Farm's expert —George Mitchell—opined in a declaration that the leak was caused by long term corrosion resulting from a latent defect, wear, tear, or deterioration. Mitchell formed his opinion after viewing a video and photographs of the leak, reading Plaintiffs' deposition testimony describing the leak, and personally inspecting the area where the loss occurred. He explained there is "no evidence that any external force or impact caused trauma to the pressurized cold-water supply line," nor is it possible anything impacted the pipe "due to its protected location in the ceiling above the refrigerator." This was sufficient to show the damage to the pipe was the result of wear, tear, deterioration, or corrosion, each of the which the policy expressly excludes from coverage.

State Farm also presented ample evidence that Plaintiffs' policy excludes coverage for the water damage resulting from the leak. Mitchell opined that the damage was the result of water dripping from the pipe slowly and continuously over an extended period of time. He based his opinion on photographs of the area and a video of the leak, which apparently showed water dripping from the ceiling joist at a relatively slow rate of speed. Mitchell noted the lack of signs of water splashing in the surrounding area, which indicated there was no major spraying of water. He also reasoned that Plaintiffs' self-constructed catch system would not have worked if water had been spraying from the pipe. This was sufficient to show any water damage to Plaintiffs' property was the result of continuous or repeated seepage or leakage, which the policy expressly excludes from coverage.

11

The evidence summarized above is sufficient to show the policy excludes coverage for all the damage to Plaintiffs' property. State Farm, therefore, met its initial burden on summary judgment.  (See *Medina v. GEICO Indemnity Co.* (2017) 8 Cal.App.5th 251, 259–260 [an insurer may seek summary judgment on the ground that the insured's claim is excluded under the policy]; *Alex R. Thomas & Co. v. Mutual Service Casualty Ins. Co.* (2002) 98 Cal.App.4th 66, 74 (*Alex R. Thomas*) [an insurer need not disprove all possible causes of a loss to meet its burden on summary judgment].)  Accordingly, the burden shifted to Plaintiffs to present evidence raising triable issues of fact as to the coverage issue.  (See *Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1406 (*Roberts*) ["once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists"].)

**3.     *Plaintiffs failed to raise triable issues of fact***

Plaintiffs contend they presented sufficient evidence to raise triable issues of fact as to whether:  (1) the leak was the result of wear, tear, or deterioration; (2) the resulting water damage was caused by continuous or repeated seepage or leakage; and (3) State Farm conducted an adequate investigation.  We consider each issue in turn.

a.      *Evidentiary objections*

Before considering the substantive issues, we must address Plaintiffs' arguments concerning the court's evidentiary rulings.  We review a trial court's evidentiary rulings for an abuse of discretion.  (See *Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072.)

Plaintiffs argue the trial court abused its discretion by sustaining State Farm's objections to Parker's declaration.

12

Plaintiffs fail, however, to identify the objections the court sustained or explain why those specific objections were meritless. Their conclusory assertion that the court abused its discretion does not satisfy their burden to show error affirmatively. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 ["an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim"].)

Nevertheless, for the sake of argument—and out of an abundance of caution—we will consider Parker's entire declaration to determine whether Plaintiffs raised triable issues of fact.

b. *Wear, tear, or deterioration*

Plaintiffs assert Parker's declaration created triable issues of fact as to whether State Farm properly denied coverage under the policy's exclusion for wear, tear, or deterioration. According to Plaintiffs, the trial court erred by failing to view Parker's declaration in the light most favorable to them. They note that Parker is an experienced plumber who based his opinions on the same information that Mitchel did. Plaintiffs insist that, had the court given Parker's opinions the same weight as Mitchell's opinions, it would have found triable issues of fact.

We reject Plaintiffs' contention that Parker's declaration was sufficient to raise triable issues of fact. We acknowledge that Parker is well qualified as an expert and based his opinions on similar information as did Mitchell. However, unlike Mitchell, Parker did not provide an opinion on the actual cause of the leak, which was the key issue in the case. Nor did he directly refute Mitchell's opinion that corrosion caused the leak. Instead, he merely identified additional general causes of leaks in

13

copper pipes. For example, although Parker asserted a pressure regulator failure can cause a pipe to leak, he did not conclude a pressure regulator failure actually—or even likely—caused the leak in Plaintiffs' pipe. Nor did he identify any evidence that would support such a conclusion. Because an insurer is not required to disprove all possible causes of a loss to be entitled to summary judgment, the mere possibility of alternative causes is not sufficient to survive summary judgment. (See *Alex R. Thomas, supra*, 98 Cal.App.4th at p. 74 [an insurer need not disprove all possible causes of a loss to be entitled to summary judgment]; *Roberts, supra,* 163 Cal.App.4th at p. 1406 [same].)

Parker's assertion that a lab analysis is required to prove conclusively that corrosion caused the leak is insufficient for a similar reason. Crucially, Parker did not opine that a lab analysis would have shown a lack of corrosion. Nor did Plaintiffs submit evidence to that effect. Instead, they simply asked the court to speculate as to what a lab analysis might have revealed. However, speculation is not sufficient to create a triable issue of fact. (See *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 [opposition to a motion for summary judgment may not be based on "speculation, conjecture, imagination, or guesswork"].)

Plaintiffs' reliance on *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173 is misplaced. In that case, the trial court excluded an expert's declaration submitted in opposition to a motion for summary judgment. The trial court ruled the declaration lacked adequate factual foundation and was devoid of reasoned analysis to support the expert's opinions. (*Id.* at pp. 179–180, 185.) A different panel of this Division reversed, rejecting the respondents' argument that the declaration failed to

14

meet the requirements for expert testimony under Evidence Code section 802 and *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747. The court explained, "In light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial." (*Garrett*, at pp. 188–189.)

Unlike the declaration at issue in *Garrett*, Parker's declaration is not deficient because it lacks factual foundation or is devoid of reasoned analysis. Rather, it is deficient because Parker failed to address the key issues in the case. Instead of opining on what caused Plaintiffs' pipe to leak—or directly refuting Mitchell's opinion on the cause—Parker simply identified general causes of leaks in copper pipes. He offered no reason, apart from pure speculation, to conclude any of those causes actually resulted in the leak in Plaintiffs' pipe. *Garrett* has no application under these circumstances.

We also reject Plaintiffs' argument that they raised triable issues of fact by presenting evidence that State Farm covered two subsequent water damage claims on their property. Plaintiffs cite no evidence in the record to support their argument. Instead, they rely entirely on statements in their opposition brief to State Farm's motion for summary judgment. It is elementary that an attorney's statements are not evidence. (See *J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 343.) Nor are they sufficient to create triable issues of fact.

     c.    *Continuous and repeated seepage or leakage*

Plaintiffs argue they raised triable issues of fact concerning whether State Farm properly denied coverage under the policy's

CRSL exclusion.[2]  Plaintiffs contend their evidence shows the damage to their property resulted from water spraying at a fast rate, rather than at a slow drip.  In support, they cite deposition testimony that the water was spraying from the pipe, there was extensive water damage in the area, and a five-gallon drainage bucket filled up quickly when the main water was turned on.  Plaintiffs also point to the lack of evidence of long-term water damage in the area, such as mold, rot, or soft drywall.

Even assuming Plaintiffs' evidence is true, it does not show the damage to their property falls outside the scope of the CRSL exclusion.  The CRSL exclusion applies to damage caused by a "continuous or repeated seepage or leakage of water or steam from a . . . plumbing system."  Generally, we interpret contractual terms in their " ' "ordinary and popular sense. " ' "[3] (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.)

---

[2]     For the first time in their reply brief, Plaintiffs argue the trial court did not conclude State Farm properly denied coverage under the CRSL exclusion.  Plaintiffs forfeited this argument by failing to raise it in their opening brief.  (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)  In fact, Plaintiffs argued the exact opposite in their opening brief, asserting the trial court "based its ruling on the CRSL exclusion."

[3]     At oral argument before this court, Plaintiffs seemed to argue that the interpretation of the CRSL exclusion is a question of fact for the jury to decide.  We disagree.  Contract interpretation is solely a judicial function where, as here, it is based on the words of the instrument alone.  (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.)

The Merriam-Webster dictionary defines "continuous" as "marked by uninterrupted extension in . . . time." (Merriam-Webster Dict. Online (2024) <https://www.merriam-webster.com/dictionary/continuous> [as of Oct. 29, 2024], archived at <https://perma.cc/N6UD-SVWA>.) The Cambridge dictionary defines it as "without a pause or interruption." (Cambridge Dict. Online (2024) <https://dictionary.cambridge.org/dictionary/english/continuous> [as of Oct. 29, 2024], archived at <https://perma.cc/RF5Q-2NL5>.) Using these definitions, a leak is continuous for purposes of the CRSL exception if it will continue indefinitely absent outside intervention. In contrast, a leak is not continuous if it ends on its own without intervention. Examples of the latter might be "[a] dishwater hose breaking in midcycle, a water heater giving out and flooding a room, or an overflowing toilet." (*Brown v. Mid-Century Ins. Co.* (2013) 215 Cal.App.4th 841, 853 (*Brown*).)

Here, the undisputed evidence shows the leak occurred in a cold-water supply line. Given its location, there is no reasonable dispute that the leak would have continued indefinitely absent outside intervention. Indeed, Plaintiffs asserted the water stopped leaking only when they turned off the main water supply. When they turned the main water back on, the leak would resume. On this record, even assuming the leak was spraying rapidly for a short period of time, no reasonable trier of fact could conclude the leak was anything other than a "continuous . . . leakage of water . . . from a plumbing system." (See *Brown, supra*, 215 Cal.App.4th at p. 852 ["whether the water leaked or sprayed or streamed out of the hole(s) in the pipe, the water leaked, sprayed, or streamed out constantly and gradually

17

over time"].)  Accordingly, State Farm properly denied coverage for the resulting damage under the CRSL exclusion.

Plaintiffs contend the CRSL exclusion requires that the damage occurred over an extended period of time.  Their contention is based on a misreading of the policy.  Plaintiffs rely on language in the main policy stating a continuous or repeated seepage or leakage must "occur[ ] over a period of time" to be excluded from coverage.  However, Plaintiffs' policy includes a condominium endorsement, which expressly deletes that provision.  In its place, the endorsement inserts a revised CRSL exclusion that denies coverage for any loss resulting from "continuous or repeated seepage or leakage of water or steam from a . . . plumbing system."  The revised exclusion does not expressly require the loss occur over a period of time, let alone an extended period of time.  Moreover, as the trial court noted, the revised exclusion expressly denies coverage for water damage "whether the event occurs suddenly or gradually."

Rather than suggest an alternative interpretation of the endorsement's CSLR exclusion, Plaintiffs simply urge us not to enforce it.  According to Plaintiffs, enforcement of the exclusion would lead to absurd results because it would mean the policy both provides coverage for water damage and excludes it.  In a related argument, they contend the exclusion is absurd because "something cannot be both gradual and sudden at the same time."

We are not persuaded by either argument.  It is not apparent—and Plaintiffs do not meaningfully explain—how the endorsement both covers, and excludes coverage for, water damage.  Nor does the endorsement require anything to occur both gradually and suddenly.  Rather, it excludes coverage for

18

water damage "whether the event occurs suddenly *or* gradually." (Italics added.) There is nothing absurd about this provision.

*Brown, supra*, 215 Cal.App.4th 841, is inapposite. The policy at issue in that case covered losses resulting from a " 'sudden and accidental discharge' " of water, but excluded losses caused by a " 'constant or repeating gradual, intermittent or slow release of water.' " (*Id*. at pp. 846, 856–857.) The insureds argued the policy covered water damage caused by a leaking pipe because, although the damage occurred gradually over an extended period of time, the pipe itself burst suddenly. The court rejected the argument, reasoning that "[t]he nature of the gradual water discharge from the [insureds'] pipe (even if initiated by a nanosecond breach in the wall of the pipe) and of the incremental effects of the water on the [insureds'] house precludes any finding that the discharge was sudden." (*Id*. at pp. 851–853.)

Plaintiffs argue *Brown* stands for the proposition that "the length of time a pipe leaks determines coverage." (Boldface type omitted.) While that may be true of the policy at issue in *Brown*, it is not true here. Instead, under the CRSL exclusion, coverage depends on whether the damage resulted from a "continuous or repeated seepage or leakage" of water. On that issue, Plaintiffs failed to submit evidence raising a triable issue of fact.

> d. *State Farm's investigation*

Plaintiffs argue there are triable issues of fact concerning whether State Farm breached its duty to investigate the circumstances of the claim and determine the cause of the loss. According to Plaintiffs, their evidence shows State Farm made the decision to deny the claim during the initial inspection, before completing its investigation. They also contend their

19

evidence shows State Farm failed to examine the pipe, have it tested, or retain an expert to determine the cause of loss. Instead, State Farm determined only that the cause of loss was "most likely" not covered.

As the trial court noted—and Plaintiffs seem to concede—the sufficiency of State Farm's investigation is relevant only to whether it breached the implied covenant of good faith and fair dealing. "[T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151.) Therefore, "[w]here benefits are withheld for proper cause, there is no breach of the implied covenant." (*Ibid.*; see *Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1250 ["to establish an implied covenant tortious breach, an insured must show first, that benefits were due under the policy"]; *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54 ["declining to perform a contractual duty under the policy *with proper cause* is not a breach of the implied covenant"].)

Here, Plaintiffs failed to submit evidence creating a triable issue of fact as to whether State Farm withheld benefits due under the policy. As discussed above, they produced no evidence from which a reasonable trier of fact could conclude the damage to the pipe was caused by something other than corrosion from wear, tear, or deterioration. Nor did they produce evidence from which a trier of fact could conclude the water damage was caused by something other than continuous or repeated seepage or leakage from a plumbing system. Absent such evidence,

20

Plaintiffs cannot prove an essential element of their claim that State Farm breached the covenant of good faith and fair dealing. Therefore, even if Plaintiffs raised triable issues of fact as to whether State Farm's investigation was inadequate, it is not enough to survive summary judgment.

**4.** ***The court did not deny Plaintiffs the opportunity to argue at the hearing***

Plaintiffs contend the trial court refused to grant them the opportunity at the hearing to address State Farm's evidentiary objections and the CRSL exclusion. There is simply no merit to either contention. At no point during the hearing did the court refuse to allow Plaintiffs to address any issue. In fact, Plaintiffs argued at length about the CRSL exclusion, telling the court it was the "actual issue in dispute." Although Plaintiffs did not discuss State Farm's evidentiary objections, that was by their own choice. There is no merit to their contention that the court denied them the opportunity to argue any issues.

## DISPOSITION

We affirm the judgment. State Farm is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, Acting P. J.

We concur:



ADAMS, J.



BERSHON, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.